# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST John J. CROSETTO, Attorney at Law.

Supreme Court

*No. 90-0265-D. Submitted on briefs January 4, 1991.—Decided March 20, 1991.*

(Also reported in 466 N.W.2d 879.)

For the appellant there were briefs by *Richard C. Kelly* and *Mealy & Kelly,* Whitewater.

For the Board of Attorneys Professional Responsibility there was a brief by *Gerald C. Sternberg,* Administrator, Madison.

PER CURIAM. *Attorney disciplinary proceeding; attorney publicly reprimanded.*

This is an appeal by the respondent, Attorney John J. Crosetto, from the conclusion of the referee that he violated the court's rules governing the professional conduct of attorneys by his conduct toward and statements to a family court commissioner during the course of a hearing. Attorney Crosetto also appealed from the referee's recommendation that he be publicly reprimanded as discipline for that professional misconduct.

Before reaching the merits of the appeal, we address the motion filed by Attorney Crosetto on December 10, 1990, more than four months after he filed the appeal in this proceeding, asking the members of this court to recuse themselves in the proceeding, pursuant to sec. 757.19(2), Stats., and pursuant to federal and state constitutional provisions, on the ground that the risk of bias is, in his terms, "impermissibly high" because the members of the court were defendants in a federal action in which he is a named plaintiff. That action sought declaratory and injunctive relief and a claim for damages arising out of this court's having required attorneys to be members of the State Bar of Wisconsin. Notwithstanding that the justices had been dismissed as parties to that action, Attorney Crosetto contended that we have a significant personal interest in the outcome of this proceeding.

The disqualification statute Attorney Crosetto cited in his motion, sec. 757.19(2), Stats., lists seven circum-

stances requiring a judge to disqualify himself or herself from a civil or criminal action or proceeding.[1] The motion for disqualification alleged that each justice of this court has a significant personal interest in the outcome of this disciplinary proceeding because of personal criticism made against the justices in the pleadings and briefs filed in that action; further, it was asserted that each justice should determine that he or she cannot, or it appears he or she cannot, act in an impartial manner.

The members of this court, individually, have determined that none has a significant personal interest in the outcome of this disciplinary proceeding such as would require our disqualification. Each is satisfied that his or her impartiality in this proceeding is unimpaired and, further, that our acting in this matter does not create the appearance of a lack of impartiality. Accord-

---

[1]Section 757.19(2), Stats., provides:

Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

(a) When a judge is related to any party or counsel thereto or their spouses within the 3rd degree of kinship.

(b) When a judge is a party or a material witness, except that a judge need not disqualify himself or herself if the judge determines that any pleading purporting to make him or her a party is false, sham or frivolous.

(c) When a judge previously acted as counsel to any party in the same action or proceeding.

(d) When a judge prepared as counsel any legal instrument or paper whose validity or construction is at issue.

(e) When a judge of an appellate court previously handled the action or proceeding while judge of an inferior court.

(f) When a judge has a significant financial or personal interest in the outcome of the matter. Such interest does not occur solely by the judge being a member of a political or taxing body that is a party.

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

584

ingly, we deny the motion for recusal and address the merits of the appeal.

We determine that the referee's conclusions concerning Attorney Crosetto's conduct were properly drawn from the undisputed facts. The referee had concluded that Attorney Crosetto engaged in conduct intended to disrupt the tribunal, in violation of SCR 20:3.5,[2] and violated that portion of the Attorney's Oath, SCR 40.15,[3] by which an attorney swears to maintain

---

[2]SCR 20:3.5 provides:

**Impartiality and decorum of the tribunal.**
A lawyer shall not:
   (a)   seek to influence a judge, juror, prospective juror or other official by means prohibited by law;
   (b)   communicate ex parte with such a person except as permitted by law; or
   (c)   engage in conduct intended to disrupt a tribunal.

[3]SCR 40.15 provides:

**Attorney's oath.** The oath or affirmation to be taken to qualify for admission to the practice of law shall be in substantially the following form:
   I will support the constitution of the United States and the constitution of the state of Wisconsin;
   I will maintain the respect due to courts of justice and judicial officers;
   I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land;
   I will employ, for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;
   I will maintain the confidence and preserve inviolate the secrets of my client and will accept no compensation in connection with my client's business except from my client or with my client's knowledge and approval;
   I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;

585

the respect due to courts of justice and judicial officers. We adopt those conclusions and determine that a public reprimand is appropriate discipline for Attorney Crosetto's breach of his fundamental professional duty to abstain from disrespectful, disruptive conduct toward the judicial system and its officers.

Attorney Crosetto was licensed to practice law in Wisconsin in 1967 and practices in Kenosha. He has not previously been the subject of an attorney disciplinary proceeding. The referee is Attorney Rudolph P. Regez.

Although not in total agreement on the sequence of events, the parties did not dispute the facts found by the referee. In 1988, Attorney Crosetto represented a man in a divorce action in which the wife was awarded temporary custody of the couple's five-year-old son. Both parents had a history of drug abuse and, while the father had discontinued the use of drugs, it appeared the mother had not. In September, 1988, Attorney Crosetto filed a motion seeking a transfer of temporary custody of the child to his client, based on the wife's alleged continued use of cocaine. Prior to the hearing on the motion, the wife's attorney withdrew from representation and the wife appeared at the hearing unrepresented.

At that hearing, with no court reporter present, the husband testified to having observed evidence of his wife's continued cocaine use after the divorce proceeding had commenced. The wife denied the incident to which her husband had testified but admitted to using cocaine following the commencement of the proceeding. She subsequently denied having made that admission and, because a reporter had not been present and the presiding family court commissioner, Carl M. Greco, had kept

I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice. So help me God.

no minutes or notes of the testimony, this remains in dispute.

Following the hearing, Attorney Crosetto prepared for Commissioner Greco's signature an order setting forth findings of fact and an order transfering custody of the child to the husband, striking his support obligation and granting visitation rights to the mother. Included in the documents submitted to Commissioner Greco and which he signed were specific findings that at the hearing the wife had admitted to using cocaine after the commencement of the divorce action and that the child was in danger in her custody.

Shortly thereafter, the wife retained Attorney Mari Higgins-Frost, who then filed a motion to vacate the order transfering custody to the father and to obtain temporary joint custody and reinstatement of the husband's support obligation. A hearing on that motion was held November 10, 1988, and it was at that hearing that Attorney Crosetto's conduct now before us occurred.

The parties appeared at the hearing with their respective counsel and a witness was present to testify in support of the husband. However, the child's guardian ad litem had not been notified of the hearing until earlier the same day and was not present when it commenced. Because of his absence and because there was no court reporter present, Commissioner Greco stated he was going to adjourn the hearing. Nonetheless, Attorney Frost began to argue that her client should be awarded the relief she had requested, stating that she herself had been present at the prior hearing, waiting for another matter to be heard, and observed that her client had made no admission to any cocaine use subsequent to the commencement of the divorce action. Attorney Crosetto then requested permission to take the witness' testimony but his request was denied and the witness was excused.

Attorney Frost continued to argue that Commissioner Greco's order based on the testimony at the prior hearing should be vacated, to which Attorney Crosetto responded by calling her arguments "stupid," saying that as a disinterested observer at the prior hearing, she would have had no reason to focus attention on the testimony as would the court commissioner and he himself. Attorney Frost then accused Attorney Crosetto of having taken "gross advantage of an unrepresented litigant" at that hearing by not providing her a copy of the findings and order he subsequently prepared for Commissioner Greco's signature and giving her an opportunity to object to their content. Attorney Crosetto responded by again calling Attorney Frost's remarks "stupid" and asserting that she was acting unethically as both attorney and witness.

Commissioner Greco told the parties to stop arguing and said he would hold an evidentiary hearing at a later date. Thereupon, Attorney Crosetto questioned the need for a hearing, particularly in light of the fact that Commissioner Greco and Attorney Frost would be witnesses to what had occurred at the prior hearing. Commissioner Greco responded that he was setting the motion for hearing because he had no recollection of the evidence presented at the prior hearing, had no notes or minutes of the testimony given and did not know whether the findings set forth in the order Attorney Crosetto prepared and he signed were correct.

In response, Attorney Crosetto reminded Commissioner Greco that he had signed the order the same day as the hearing, when the testimony would still have been fresh in his memory. When Commissioner Greco responded that he had no memory of the hearing, Attorney Crosetto asked, "Well, you read your orders before you sign them, don't you?" He then suggested that Com-

missioner Greco review his minutes of the hearing and when Commissioner Greco said he had no minutes, Attorney Crosetto said, "What business do you having signing orders, if you don't read them carefully and if you have no minutes to check them against?"

Commissioner Greco then replied, "I am going to have to scrutinize your orders more closely as some other judges have found necessary." To this Attorney Crosetto responded by pointing a finger in Commissioner Greco's face, calling him a "big mouth" and challenging him to name a judge who had found it necessary to closely scrutinize orders he had prepared. Commissioner Greco did not do so and Attorney Crosetto responded in a loud voice, "You can make the accusations but don't have the guts to back them up," adding, "Who the hell do you think you are" and "You're totally nuts."

Commissioner Greco later testified that his remark about having to scrutinize orders as other judges had found necessary was directed at himself and referred to orders prepared by attorneys generally. Notwithstanding that elaboration, the referee specifically found that his remark was directed specifically against Attorney Crosetto.

On the basis of these facts, the referee concluded that Attorney Crosetto's conduct and statements to Commissioner Greco were disrespectful and in violation of SCR 20:3.5(c), and that his conduct violated that portion of the Attorney's Oath requiring attorneys to "maintain the respect due courts of justice and judicial officers."

In recommending that Attorney Crosetto be publicly reprimanded for such conduct, the referee considered Attorney Crosetto's remarks and conduct to be of such a nature that they must be "judicially decided as rude, demeaning and disrespectful" and "were such as to

589

upset the dignity and decorum required not only by the court but by simple courtesy and etiquette." He added, "The Bar and public must not in any way be allowed to have an inference of judicial or other approval of such conduct." In making his recommendation of discipline, the referee specifically considered that Attorney Crosetto's remarks had been precipitated by Commissioner Greco's uncalled for statement directed against him, which labeled him, in the referee's view, as "dishonest, devious and guilty of sharp practices, accusations that would enrage any self-respecting attorney." Nevertheless, the referee stressed that conduct such as Attorney Crosetto's cannot be accepted. However, because of what he considered Commissioner Greco's provocation, the referee recommended that Attorney Crosetto be required to pay only one-half the costs of this proceeding.

In his appeal from the referee's conclusions and recommendation of discipline, Attorney Crosetto first argued that the conclusion that his conduct violated SCR 20:3.5(c) is not supported by the facts for the reason that the referee did not specifically find that he had intended to disrupt a tribunal. Attorney Crosetto took the position that the referee was in fact applying the prior rule of the Code of Professional Responsibility, SCR 20.40(3)(f), which proscribed a lawyer's engaging in "undignified or discourteous conduct which is degrading to a tribunal." Attorney Crosetto insisted that his conduct toward Commissioner Greco was intended to defend his reputation and to support the findings of fact and order transferring custody he had drafted and submitted to Commissioner Greco. That argument is without merit. The finding that Attorney Crosetto intended by his conduct to disrupt the proceeding was implicit in the referee's conclusion that "[Attorney Crosetto's] con-

590

duct and statements were disrespectful and such as would disrupt a tribunal contrary to SCR 20:3.5(c)."

Attorney Crosetto next argued that the referee's conclusion regarding the violation of SCR 20:3.5(c) was not supported by the facts for the reason that, when his conduct occurred, Commissioner Greco was not acting as a tribunal but had already adjourned the motion hearing because the guardian ad litem had not yet appeared and there was no court reporter. This argument, too, is without merit, for it ignores the fact that counsel for the party adverse to Attorney Crosetto's client was presenting argument to Commissioner Greco in order to obtain an immediate transfer of temporary custody of the child and Attorney Crosetto was "arguing" for the position that the commissioner's prior order should not be disturbed. Attorney Crosetto's attempting to prevent the family court commissioner from vacating his prior custody order is inconsistent with his claim in this appeal that Commissioner Greco was not acting as a tribunal when Attorney Crosetto engaged in the offensive conduct.

In response to the referee's conclusion that he violated the Attorney's Oath, Attorney Crosetto contended that, because of Commissioner Greco's having permitted opposing counsel's "slanderous" statement that he had taken advantage of an unrepresented litigant to go unchallenged and his own "slanderous" statement concerning the need to scrutinize more carefully orders presented for his signature, Commissioner Greco was not due any more respect than that which Attorney Crosetto accorded him. That argument merits response only to emphasize, as did the referee, that any provocation that might have occurred by virtue of Commissioner Greco's

591

remark does not excuse Attorney Crosetto's intemperate, disrespectful outbursts and gestures.

Finally, Attorney Crosetto contended that the referee abused his discretion by recommending discipline greater than that requested by the Board of Attorneys Professional Responsibility (Board) both prior to commencing this proceeding and in its disciplinary complaint filed with the court. In that complaint, the Board had sought a private reprimand as discipline for Attorney Crosetto's misconduct; prior to filing it, the Board had asked Attorney Crosetto to consent to the Board's imposing a private reprimand, without the necessity of a formal proceeding, pursuant to SCR 21.09(2), but Attorney Crosetto refused.

That argument is meritless. Pursuant to the procedure governing the enforcement of the rules of attorney professional conduct, SCR 21.09(5), the referee is appointed by the court to conduct a hearing on the Board's complaint and file a report stating findings and disposition of the complaint by recommendation of dismissal or imposition of discipline. The recommendation of discipline is the product of the referee's assessment of the seriousness of the attorney's misconduct and the harm it caused others and it may or may not coincide with the discipline the Board had sought prior to or during the proceeding. Regardless, after the referee files the report with this court, we review it and determine appropriate discipline to be imposed.

We adopt the referee's findings of fact and conclusions of law and accept his recommendation of discipline to be imposed for Attorney Crosetto's professional misconduct in this matter. However, we do not accept the referee's recommendation that, because of provocation on the part of Commissioner Greco, Attorney Crosetto

592

should be required to pay only one-half the costs of this proceeding. To whatever extent that provocation might affect this proceeding, it is with respect to the seriousness of Attorney Crosetto's misconduct and the severity of discipline to be imposed for it; it does not affect the amount of costs the offending attorney should be required to pay.

IT IS ORDERED that Attorney John J. Crosetto is publicly reprimanded for professional misconduct.

IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney John J. Crosetto pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of John J. Crosetto to practice law in Wisconsin shall be suspended until further order of the court.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Attorney Crosetto was charged with engaging in conduct *intended to disrupt* the court commissioner's proceedings in violation of SCR 20:3.5(c). The referee held that Attorney Crosetto's conduct was rude, demeaning, and disrespectful and "such as would disrupt a tribunal contrary to SCR 20:3.5(c)." The referee further found that Attorney Crosetto was an honest, hard-working, private practitioner whose conduct was precipitated by Commissioner Greco's uncalled for, intemperate, discourteous, and unfounded accusations "that would enrage any self-respecting attorney."[1]

The majority, the Board of Attorneys Professional Responsibility (BAPR) and I agree that the referee did

---

[1]Referee's Report and Recommendation, p. 10.

not in any factual finding or conclusion of law state that Attorney Crosetto intended to disrupt the tribunal.

The majority concludes, however, that Attorney Crosetto's intent to disrupt was implicit in the referee's legal conclusion that Attorney Crosetto's conduct and statements violated SCR 20:3.5(c). BAPR asserts that the record shows, by clear and convincing evidence, that Attorney Crosetto intended either to force the commissioner to recuse himself or to dissuade the commissioner from holding an evidentiary hearing. (Board's brief at 15.) According to BAPR, Attorney Crosetto's conduct was designed to achieve those results.

I conclude that the required finding of intent to disrupt cannot be inferred from the referee's report. As I shall discuss more fully later, one can infer from the report only that the referee mistakenly disregarded intent as an element of the offense. I further conclude that the facts adduced do not show by clear and convincing evidence that Attorney Crosetto intended to disrupt the tribunal. The majority opinion's conclusions about Attorney Crosetto's intent conflict with both the referee's report and the evidence in the record. I therefore dissent from that portion of the opinion imposing discipline.

In addition to addressing whether the fact of intent was found or proved, I shall address two issues raised by Attorney Crosetto's appeal: recusal or disqualification of justices of this court and the function of court commissioners.

I.

Neither the referee nor this court can evaluate Attorney Crosetto's misconduct—and misconduct it was—in the abstract. The issue is not whether Attorney

594

Crosetto's conduct was rude, demeaning, disrespectful and subject to condemnation. The issue is whether he violated SCR 20:3.5(c) of the Rules of Professional Conduct for Attorneys. More specifically, the issue is whether Attorney Crosetto engaged in conduct *with the intent to disrupt a tribunal.*

This disciplinary case against Attorney Crosetto stems from words spoken at the end of a court commissioner's hearing on November 10, 1988, on a motion to transfer temporary custody of a child from the father to the mother.

The referee's findings of fact and recommendations referred to only two incidents of Attorney Crosetto's behavior:

> 1. Attorney Crosetto "criticized [the Commissioner] for not making or keeping either minutes or notes of the testimony taken at the hearing."[2]
> 2. Attorney Crosetto was "enraged by the Commissioner's [accusatory] remarks and pointing his finger [at the Commissioner], retorted in a loud voice" as follows: "You big mouth, name (one judge). You can make the accusations but don't have the guts to back them up. Who the hell do you think you are. You're totally nuts."[3]

---

[2]Referee's Report and Recommendation, Finding of Fact 6, p. 8.

[3]Referee's Report and Recommendation, p. 8.

It is unclear from the referee's report whether the referee was basing his recommendation on Attorney Crosetto's criticism of the Commissioner's failure to take notes or Attorney Crosetto's "big mouth" remarks or both.

Counsel for the mother and Attorney Crosetto also had a dispute. The referee's summary of the testimony stated that counsel for the mother accused Attorney Crosetto of taking gross advantage of an unrepresented litigant and that Attorney Crosetto replied by labeling the counsel's argument stupid and

Attorney Crosetto's remarks were, according to the referee, precipitated by the commissioner's unfounded accusation in the presence of Attorney Crosetto's client and other lawyers that Attorney Crosetto was "dishonest, devious and guilty of sharp practices."[4] The referee concluded that the commissioner's false accusations were "uncalled for and unnecessary and did not meet the judicial standards set forth in the Code of Judicial Ethics SCR 60.01. They were not temperate or courteous, were embarrassing and violative of the rules of fair play just as was Attorney Crosetto's conduct."[5] The referee's conclu-

accusing the counsel of acting unethically as both the attorney and witness. Referee's Report and Recommendation, p. 5. In his findings of fact and recommendation, the referee made no reference to Attorney Crosetto's remarks to the mother's counsel. In the recommendation section of the report, the referee characterized the conduct of counsel for the mother as "abandoning her role as attorney and springing forth as a witness" and as "frustrating" Attorney Crosetto. Referee's Report and Recommendation, p. 11.

[4]The referee found the accusations to be unfounded. At the disciplinary hearing the commissioner denied that his comments were directed to Attorney Crosetto and acknowledged that he had no basis to accuse Attorney Crosetto of being dishonest, devious or guilty of sharp practices. The referee expressly found that the commissioner's accusations were directed to Attorney Crosetto. The guardian ad litem and the mother's counsel testified that they had never heard any disparaging remarks about Attorney Crosetto's honesty and never had any experience with Attorney Crosetto misdrafting orders.

[5]Referee's Report and Recommendation, pp. 10–11.

SCR 60.01(3) provides: "A judge should be temperate, attentive, patient . . .."

SCR 60.01(6) provides: "A judge should be considerate and courteous[,] . . . should require similar conduct on the part of clerks, court officials and counsel . . . [and] should conduct all

sion of law states that "[Attorney Crosetto's] conduct and statements were disrespectful and such as would disrupt a tribunal contrary to SCR 20:3.5(c)."[6] The referee also stated that Attorney Crosetto's remarks "were precipitated by Commissioner Greco's uncalled for statements and accusations directed at him."

Indeed the referee's report makes no reference to Attorney Crosetto's intention. The majority opinion concludes, majority op. at 590, that a finding of Attorney Crosetto's intention is implicit in the referee's conclusion of law that Attorney Crosetto violated SCR 20:3.5(c). I disagree.

A finding of intent to disrupt, a factual finding, cannot be inferred from the referee's legal conclusion in this case. The referee mistakenly disregarded the element of intent. Nowhere in his 12-page report, including 6 pages of summary of testimony and 7 findings of fact, did the referee ever refer to Attorney Crosetto's intent. The referee's report expressed offense at and whole-hearted disapproval of Attorney Crosetto's discourteous conduct, which was such as to "upset the dignity and decorum required not only by the court but by simple courtesy and etiquette." But the referee did not explic-

---

judicial proceedings so as to reflect the importance and seriousness of the inquiry to ascertain the truth."

SCR 60.01(9) provides: "A judge should conduct the work of his or her court with dignity and decorum and . . . should so act during trials and hearings that his or her attitude, manner or tone toward counsel or witnesses will not prevent the proper presentation of the cause or the ascertainment of the truth."

A judge is not disciplined for violation of SCR 60.01 unless the violation is aggravated or persistent. SCR 60.17.

[6]Referee's Report and Recommendations, Conclusion of Law 1, p. 9.

itly or implicitly characterize Attorney Crosetto's conduct as conduct intended to disrupt the tribunal.

The referee's extensive reliance on a New Jersey case[7] that the referee characterized as "similar" to this case underlines his disregard for the required element of intent to disrupt. The two cases are not similar. The offense in the New Jersey case apparently required proof only of undignified and discourteous behavior degrading the tribunal (DR 7-106 (c)). The offense apparently did not require proof of any intent, although punishment might depend on the lawyer's intent. In the New Jersey case the attorney's conduct was found to be "undignified and discourteous and intended to degrade" the tribunal. In this case the offense requires proof of intent to disrupt, and no finding of intent was made.

Attorney Crosetto argues, as the majority opinion explains, majority op. at 590, that the referee mistakenly applied an earlier version of the Code of Professional Responsibility, SCR 20:40(3)(f), that proscribed "a lawyer's engaging in undignified or discourteous conduct which is degrading to a tribunal." SCR 20:40(3)(f) was in effect until January 1, 1988, approximately 11 months before the incident at issue in this case.[8] The referee's report and the referee's extended reliance on the New Jersey case, which is based on DR 7-106(c), support Attorney Crosetto's argument that the referee did not consider the question of intent to disrupt required under the relevant provision in the new Wisconsin Code of Professional Responsibility.[9]

---

[7] *In re Mezzacca,* 67 N.J. 387, 340 A.2d 658 (1975).

[8] Chapter 20 of the Supreme Court Rules was repealed and recreated by Supreme Court Order of June 10, 1987, effective January 1, 1988.

[9] New Jersey apparently had adopted the ABA Model Code

BAPR asks the court to examine the record for clear and convincing evidence to support a finding of intent to disrupt. BAPR appears to argue that Attorney Crosetto intended his conduct to disrupt the proceedings in two ways: (1) Attorney Crosetto intended to avert an evidentiary hearing on the custody order, and (2) Attorney Crosetto intended to have the commissioner recuse himself. BAPR asserts that forcing a recusal is a disruption of the tribunal under SCR 20:3.5(c).[10]

The referee's report demonstrates that the referee did not accept BAPR's view of the evidence.[11] In direct conflict with BAPR's and the majority opinion's reading of the record about Attorney Crosetto's intent, the referee found that Attorney Crosetto was provoked to anger and responded out of emotion. The referee expressly found that Attorney Crosetto's conduct was precipitated by the commissioner's conduct and that Attorney Crosetto was "outraged and that rage brought forth the unfortunate utterance." The referee also characterized Attorney Crosetto as "frustrated" and concluded that Attorney Crosetto had "allowed his emotions to affect his conduct as an attorney."[12] On the basis of these

DR7-106 (c) which Wisconsin had also adopted as SCR 20:40(3)(f).

[10]BAPR's brief states: "[Attorney Crosetto's] conduct, including the remarks directed at Commissioner Greco, clearly emanated from his desire to disturb the Commissioner's decision for a new hearing or to get him off the case, which is what he achieved." (Brief at 15.)

[11]In his summary of testimony, his findings of fact and his recommendation, the referee made no reference at all to testimony or evidence that in any way intimates that Attorney Crosetto acted as he did with an intent to dissuade the commissioner from scheduling a hearing or to force a recusal.

[12]Referee's Report and Recommendation, pp. 10-11.

findings the referee recommended Attorney Crosetto be charged with only one half the costs of the proceeding. Nothing in the referee's report supports BAPR's or the majority opinion's assertions that Attorney Crosetto intended to disrupt the tribunal.

Leaving aside the referee's findings, the record contains no evidence that Attorney Crosetto intended his conduct to force the commissioner to cancel the evidentiary hearing or to recuse himself. In fact, the only evidence in the record relating to Attorney Crosetto's intent refutes BAPR's and the majority's conclusions. Attorney Crosetto argued in his opening statement before the referee that "the statements he made were not made with the intent to disrupt the tribunal, they were made with the intent of defending his own integrity, his own reputation." Attorney Higgins-Frost, counsel for the mother, testified that Attorney Crosetto's reaction was one of "honest anger" and not theatrical. Attorney Kupfer testified that

> I noted [Attorney Crosetto's] exact words as I was rather surprised to hear them and could not see any rationale for his comments . . .. [I]t was apparent to me we weren't going to have a hearing, so why were there any continued discussions about the motion, when it was clear there wasn't going to be a full hearing on the motion. I couldn't see anything was warranted, other than just getting a new date.

BAPR did not raise the subject of Attorney Crosetto's intent in its opening statement. In the midst of the hearing, despite Attorney Crosetto's assertions from the beginning of the disciplinary proceedings that he had been provoked and that his intent was to defend his integrity, BAPR's counsel stated that Attorney Crosetto "recently made the argument" that the Commissioner's unfounded accusations provoked Attorney

Crosetto's comments. BAPR's counsel then made an offer of proof of evidence of Attorney Crosetto's intent. The referee refused to admit the evidence.

The only reasonable inferences of fact from the referee's report and the entire record are as follows: Attorney Crosetto characterizes himself as an aggressive advocate. The referee found that Attorney Crosetto responded emotionally, with outrage, having been provoked, "as any self-respecting lawyer would be," by unfounded accusations demeaning his integrity as a lawyer. Attorney Crosetto's conduct was a reflexive response made with the intent to defend the integrity of a legal document he had drafted and to clear his reputation before his client and other lawyers, as Attorney Crosetto claimed.[13]

The referee did not make the necessary finding of Attorney Crosetto's intent to disrupt a tribunal[14] and made findings that conflict with finding an intent to disrupt. No clear and convincing evidence exists to support a finding of intent to disrupt. I would therefore dismiss this proceeding.

## II.

Attorney Crosetto moved that the seven justices recuse themselves. The motion papers assert that the risk of bias is "impermissibly high" because Attorney

[13]Attorney Crosetto testified that other lawyers were present when the commissioner made accusations that were "hurtful" to him personally and to his practice. He testified his only thought was to "put a stop" to these lies.

[14]Attorney Crosetto asserts that the Commissioner was not sitting as a tribunal at the time of Attorney Crosetto's statements. I need not reach this question. He claims the hearing was over and they were engaged in the clerical task of fixing a date for the next hearing.

Crosetto and other plaintiffs in a federal suit against the justices relating to the integrated bar "levelled direct, personal, and substantial criticism against the justices in pleadings and in a brief filed in the federal lawsuit."[15] Memorandum in Support of Motion, p. 3.

Recusal is a serious matter. Court statistics show that circuit court judges recused themselves in more than 4,000 cases in 1990. The issue of recusal of a justice has arisen at least three times in this court in the last 18 months.

The majority opinion suggests that Attorney Crosetto's motion for recusal was untimely. When and how should a litigant move for recusal of a justice? Does the court's hearing the matter on oral argument or on briefs affect the timing or procedure? Ordinarily parties do not know whether justices have recused themselves until the opinion is released.

Is the subjective standard set forth in *American TV and Appliance of Madison, Inc.*, 151 Wis. 2d 175, 182-83, 443 N.W.2d 662 (1989) (Abrahamson, J., not participating), the correct standard? Compare *State ex*

---

[15] Attorney Crosetto reasons that the justices have a personal interest in this disciplinary proceeding as follows: (1) allegations in the lawsuit—e.g., accusing the justices of violating Attorney Crosetto's civil rights for more than a decade, of reneging on a promise given under oath, and of possibly giving inconsistent answers under oath to interrogatories—may seriously damage the justices' reputations; (2) an elected justice's interest in reputation is greater than almost any financial interest he or she may have; (3) this proceeding gives the justices an opportunity to diffuse and diminish the allegations against them by reprimanding Attorney Crosetto and thus tarnishing Attorney Crosetto's reputation.

Some lawyers apparently believe that voicing a complaint against a judge jeopardizes the attorney or the clients. See lawyers' comments reported in the Wisconsin Equal Justice Task Force, Final Report, p. 244 (1990).

*rel. National Union Fire Ins. Co. v. Cir. Court for St. Croix County,* Case No. 90–0935–W, Order filed May 29, 1990 (Abrahamson, J., dissenting); and *Liljeberg v. Health Services Acquisition Corp.,* — U.S. —, 108 S. Ct. 2194 (1988), adopting the objective standard.

Is it appropriate for the court to prohibit justices from explaining, either in a published opinion or in a document in the case file, why they recuse themselves, while justices may explain in an opinion why they are not recusing themselves?[16]

What action should the court take when all or a majority of justices have to recuse themselves? BAPR responded to Attorney Crosetto's recusal motion in part by pointing out that the Supreme Court must hear the matter because it is the only entity with jurisdiction to decide attorney disciplinary proceedings. The Judicial

---

[16]On September 6, 1990, this court adopted the following interpretation of Procedure L.1. of the Court's Internal Operating Procedures:

> A justice who recuses himself or herself may file with the court or as part of a published opinion only the statement that:
> A. The justice took no part.
> B. The justice did not participate.
> C. The justice withdrew from participation.

Compare American Bar Association Code of Judicial Conduct (1990), Canon 3 E and F which state: "E. (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . .. F. A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification. If following the disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding."

Council has raised similar issues concerning disciplinary action against a justice of the Supreme Court. See Judicial Council Report dated April 26, 1990. The Judicial Council reviewed the problems, asked the court to consider the adoption of a rule or procedure relating to the handling of such matters, and offered to assist the court with drafting a rule. The court has not responded to the Council's report.

This case demonstrates the need for this court to address promptly issues relating to recusal.

## III.

A striking aspect of the record in this case is the lengthy testimony about the work of court commissioners.

In many counties the judicial system could not function without the expert and able work of the court commissioners. Court commissioners handle many of the same important matters that circuit judges handle. For example, a family court commissioner may conduct hearings and enter judgments in actions for enforcement of or revision of judgments for maintenance, child support, custody and physical placement or visitation. Section 767.13(5)(b), Stats., revised by court order dated October 31, 1990.

Court commissioners are not judges. They are not elected. They are paid less than judges. They are often given even less office and hearing room space than judges. They are not subject to all the provisions of the Code of Judicial Ethics or to judicial education requirements. They are not included in the Judicial Conference. Complaints against court commissioners relating to misconduct are not investigated by the Judicial Commission.

In this case both Attorney Crosetto and BAPR emphasized that the proceedings before the commissioner were not reported and that the commissioner kept no notes or minutes. The failure of commissioners to record their proceedings is a recurring problem for litigants and the administration of justice, one that this court should address. See Portage Daily Register, Jan. 10, 1991; Wisconsin State Journal, Jan. 11, 1991 (newspaper series on the failure of family court commissioner to record injunction hearings in domestic abuse cases in Columbia County causes change in commissioner's practice). See also Wisconsin Equal Justice Task Force, Formal Report, Report Summary, pp. 23, 25.

Circuit court judges and supreme court justices have, on several occasions, questioned whether the proliferation of court commissioners and the increase of their powers have in effect recreated under different names the two-level court system—circuit courts and county courts—that was abolished in the 1978 court reorganization. On October 31, 1990, the court issued an order increasing the powers of court commissioners. Justice Callow dissented from adoption of a part of the order "before a study is conducted on the use of court commissioners in the circuit courts." Although I voted to adopt the order, I agree with Justice Callow that a study of the use of court commissioners should be conducted.

For the reasons set forth, I would dismiss the charges.

I am authorized to state that Justice Louis J. Ceci joins in parts I and III of this dissent.

LOUIS J. CECI, J. (dissenting). I respectfully disagree with the opinion of the court imposing a public reprimand for professional misconduct.

It is apparent to me from a reading of the documents on file that the entire episode giving rise to this disciplinary proceeding began because of the very rash and insulting statement made by Commissioner Greco. This was further compounded by the vigorous advocacy of Attorney Mari Higgins-Frost, who took the untenable position that she was now attorney for the respondent wife and also a witness to a previous hearing. It seems that the further comments made by Attorney Higgins-Frost fueled the fire of controversy at this "nonhearing."

If, as the majority contends, Attorney Crosetto's remarks and conduct were rude, demeaning, and disrespectful, majority op. at 589, then this court should impose the same discipline upon Commissioner Greco for his "uncalled for statement directed against" Attorney Crosetto, *id* at 590.

This entire, unfortunate incident obviously is the result of the failure of the commissioner to keep accurate notes of a previous proceeding or the failure of our judicial system to require the recording of such proceedings.

I dissent from that portion of the opinion imposing punishment.

I am authorized to state that Justice Shirley S. Abrahamson joins in this dissenting opinion.