STATE of Wisconsin, Plaintiff-Respondent,

v.

Challoner Morse MCBRIDE, Defendant-Appellant.†

Court of Appeals

*No. 94–0415–CR. Submitted on briefs August 8, 1994.—Decided September 7, 1994.*

(Also reported in 523 N.W.2d 106.)

†Petition to review denied.

410

For the defendant-appellant the cause was submitted on the briefs of *Glenn L. Cushing*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Challoner Morse McBride appeals a judgment of conviction for one count of theft by a bailee as a party to the crime in violation of § 943.20(1)(b), STATS., and three counts of theft by fraud as a party to the crime under § 943.20(1)(d), an order denying her motion for the suppression of physical evidence and an order denying her motion for postconviction relief. McBride contends that the evidence seized pursuant to the execution of the search warrant should be suppressed because the warrant was not issued by a neutral and detached magistrate as required by the United States and Wisconsin Constitutions. McBride further contends that the trial court committed reversible error when it failed to instruct the jury that the value of the items subject to the charge must be proven beyond a reasonable doubt. Because we conclude that the warrant was issued by a neutral and detached magistrate and that McBride waived her objection to the instruction involving proof of value beyond a reason-

411

able doubt by failing to object either at the instructions conference or after the instructions were given, the judgment and the orders are affirmed.

The facts of this case are undisputed. Challoner Morse McBride, a practicing attorney in Door County, Wisconsin, was convicted of one count of being a party to the crime of theft by a bailee under § 943.20(1)(b), STATS., and three counts of theft by fraud under § 943.20(1)(d). The convictions stemmed from the theft of funds from McBride's client, Eulalia I. Addison.

At the time of the conviction, Door County had a single branch of the circuit court presided over by Judge John Koehn. Thomas Fassbender, a special agent for the State Department of Justice, applied to Judge Koehn for a warrant to search McBride's law office. The warrant sought records and documents relating to alleged thefts by McBride from Eulalia I. Addison and the Eulalia I. Addison Foundation. Based upon a finding of probable cause, which is not challenged in this appeal, Judge Koehn signed the search warrant that resulted in the discovery of a series of documents and business records used to obtain the convictions of McBride.

McBride contends that Judge Koehn was not a neutral and detached magistrate as required by the constitution because he harbored actual bias against her. McBride asserts that at the time of Judge Koehn's initial election, she was active in supporting Judge Koehn's opponent and that shortly after Judge Koehn took office she began to have problems with him. Based upon these problems, which included allegations of gender bias, McBride wrote letters to the chief judge of the eighth judicial district explaining the problems she was having with Judge Koehn. The record is silent as to any action taken by the chief judge. In addition to these

412

letters, McBride filed a formal complaint against Judge Koehn with the Wisconsin Judicial Commission. The commission conducted an investigation and subsequently dismissed the complaint after finding that there was no probable cause to proceed further.

During the period that the complaint was pending, Judge Koehn's court reporter advised McBride that Judge Koehn intended to recuse himself from all cases in which McBride appeared as counsel. After Judge Koehn made this announcement, McBride appeared in hundreds of cases filed in Door County and Judge Koehn uniformly disqualified himself in each one of those cases. In over 150 of the judicial assignment orders submitted by Judge Koehn, he cited § 757.19(2)(g), STATS., as the basis for his disqualification. Section 757.19(2)(g) provides that a judge should disqualify himself if he "determines that, for any reason, he or she cannot or it appears that he or she cannot act in an impartial manner."

The State and McBride agree that the constitution requires that "inferences of probable cause be drawn by 'a neutral and detached magistrate' " before a search warrant may issue. *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972); *see also State v. DeSmidt*, 155 Wis. 2d 119, 131, 454 N.W.2d 780, 785 (1990) ("A search warrant may only issue on the basis of a finding of probable cause by a 'neutral and detached magistrate.' "). If the issuing magistrate does not meet this constitutional mandate, the warrant is invalid. *See Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971).

McBride contends that Judge Koehn was not a neutral and detached magistrate. In support of her contention, McBride cites three United States Supreme Court cases where the Court invalidated a search warrant on the ground that the issuing magis-

trate was not neutral and detached. A review of these three cases reveals that they are not dispositive of McBride's contention that Judge Koehn was not neutral and detached. In *Coolidge*, the Court held that the issuing magistrate was not neutral and detached because he was also the chief investigator and prosecutor on the case. *Id.* In *Connally v. Georgia*, 429 U.S. 245, 246 (1977), the Court invalidated a search warrant on the ground that the justice of the peace was not neutral and detached because he received compensation for each warrant he issued. Finally, in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-27 (1979), the Court held that the issuing magistrate was not neutral and detached after he participated in the execution of the warrant. McBride's claim is wholly distinct from the claims made in *Coolidge*, *Connally* and *Lo-Ji Sales*.

McBride contends that Judge Koehn was not a neutral and detached magistrate because he harbored actual bias against her. This court has been unable to find a case that has dealt with this issue, and neither the State nor McBride has cited such a case. However, because McBride's claim centers on the question of whether Judge Koehn was impartial, we find those cases dealing with a defendant's constitutional right to an impartial and unbiased judge to be instructive.

■

Whether Judge Koehn was a neutral and detached magistrate as mandated by the United States and Wisconsin Constitutions is a question of constitutional fact that we review de novo without deference to the trial court. *State v. Ledger*, 175 Wis. 2d 116, 122, 499 N.W.2d 198, 200-01 (Ct. App. 1993). Furthermore, we note there is a presumption that a judge is free of bias and prejudice. *See Ex Parte Twintech Indus., Inc.*, 558

So. 2d 923, 926 (Ala. 1990); *State v. Rossi*, 741 P.2d 1223, 1225 (Ariz. 1987); *Korolko v. Korolko*, 803 S.W.2d 948, 950 (Ark. Ct. App. 1991). To overcome this presumption, the party asserting judicial bias must show that the judge is biased or prejudiced by a preponderance of the evidence.[1] *See Rossi*, 741 P.2d at 1225. With this in mind, we now turn to the question of whether Judge Koehn was a neutral and detached magistrate.

In determining whether Judge Koehn was actually biased, we must evaluate the existence of bias in both a subjective and an objective light. *See State v. Rochelt*, 165 Wis. 2d 373, 378-79, 477 N.W.2d 659, 661 (Ct. App. 1991). The subjective component is based on the judge's own determination of whether he will be able to act impartially. *Id.* In determining whether the subjective test is satisfied, it is only necessary to examine Judge Koehn's actions concerning the application for the search warrant. If Judge Koehn subjectively believed he would not be able to act impartially, he would have been required to disqualify himself from hearing the application for the search warrant. Because he did not disqualify himself, we may presume that Judge Koehn believed himself capable of acting in an impartial manner and therefore, our inquiry into the subjective test is at an end. *See id.* However, the fact that Judge Koehn

---

[1] The parties have not cited, nor has this court found, Wisconsin precedent that creates a presumption of judicial impartiality or establishes the burden of proof a party must meet to prove judicial bias. Because we find it persuasive, we adopt the presumption of judicial impartiality used in other jurisdictions and conclude that a party must prove judicial bias by a preponderance of the evidence in order to overcome this presumption.

415

did not believe that he was subjectively biased does not end our inquiry.

Under the objective test, we must determine whether there are objective facts demonstrating that Judge Koehn was actually biased. *See id.* Under this test, the defendant must show that the "trial judge in fact treated him unfairly."[2] *Id.* Merely showing that there was an appearance of partiality or that the circumstances might lead one to speculate that the judge was partial is not sufficient. *State v. Hollingsworth,* 160 Wis. 2d 883, 894, 467 N.W.2d 555, 560 (Ct. App. 1991).

Here, McBride first contends that Judge Koehn's voluntary recusal in a large number of cases in which McBride appeared as attorney is proof of his prejudice. We do not agree. In the vast majority of cases in which Judge Koehn disqualified himself, he cited § 757.19(2)(g), STATS., as the basis for disqualification. Under § 757.19(2)(g), a judge must disqualify himself if he determines that he cannot act in an impartial manner *or* if there is an appearance that he is not impartial. Because Judge Koehn was required to disqualify himself if there would be the appearance of bias, the fact that he disqualified himself from McBride's cases, standing alone, does not establish actual bias. As long as no actual bias exists, the appearance of bias is not a sufficient basis upon which to make the constitutional challenge mounted here. *See Hollingsworth,* 160 Wis. 2d at 894, 467 N.W.2d at 560. Therefore, in order for McBride's claim to succeed, she must demonstrate that Judge Koehn was actually biased against her. We con-

---

[2] For example, in *Connally v. Georgia,* 429 U.S. 245 (1977), the United States Supreme Court determined that a justice of the peace was not impartial where he received compensation for each warrant that he issued.

clude that the evidence submitted by McBride is insufficient to show that Judge Koehn was actually biased against her.

While the record provides an ample basis for the judge's conclusion that there would be the appearance of partiality, it does not demonstrate that Judge Koehn was actually biased. There is nothing in the record to show that Judge Koehn acted unfairly when he issued the search warrant. In fact, the record shows quite the opposite. Prior to issuing the search warrant, Judge Koehn made an inquiry into the scope of the warrant because he was concerned about the attorney-client privilege. The concern expressed by Judge Koehn before issuing the warrant demonstrates that he maintained the neutrality and impartiality his position demands. Furthermore, because McBride does not claim that Judge Koehn issued the warrant without probable cause, there is no reason to believe he acted improperly or unfairly. Therefore, we conclude that Judge Koehn's decision to disqualify himself from cases involving McBride is not sufficient evidence of actual prejudice to conclude that Judge Koehn was not neutral and detached.

McBride next contends that Judge Koehn was biased against her because she supported his opponent in the election and because she lodged complaints against him for gender bias on two separate occasions. As to McBride's support of Judge Koehn's opponent, we note that in states using elections for their judicial selection process the bar will frequently be divided among the various contenders for the judicial position. If those who support the losing candidate are allowed to claim actual bias, a judge would be unnecessarily precluded from hearing a significant number of cases arising within his or her jurisdiction. Furthermore,

judges have an ethical obligation to treat attorneys impartially. SCR 60.01(3) (Law. Co-op 1994). This court is unwilling to conclude that Judge Koehn violated this ethical obligation solely because McBride did not support his candidacy. Therefore, we conclude that McBride's support of Judge Koehn's opponent, standing alone, is not sufficient evidence to allow this court to conclude that Judge Koehn harbored actual bias against her.

The two complaints lodged by McBride are also insufficient evidence of actual bias on the part of Judge Koehn. As other jurisdictions have held, the mere fact that a party files a complaint against a judge is not sufficient to establish judicial bias. *See In re Winslow*, 107 B.R. 752, 753-54 (D. Colo. 1989); *Thomas v. State*, 611 So. 2d 416, 419 (Ala. Crim. App. 1992); *Moody v. Corsentino*, 843 P.2d 1355, 1374 (Colo. 1993); *In re Marriage of Mann*, 655 P.2d 814, 818 (Colo. 1982); *see also In re Disciplinary Proceedings Against Crosetto*, 160 Wis. 2d 581, 583-84, 466 N.W.2d 879, 880 (1991) (Recusal of supreme court justices from attorney disciplinary proceeding was not necessary despite the fact that the judges had previously been defendants in an unrelated action brought by the attorney.). Furthermore, neither the letter to the chief judge of the eighth judicial district nor the complaint filed with the Wisconsin Judicial Commission resulted in any discernable consequence for Judge Koehn that would give rise to an inference of judicial bias. Finally, the fact that Judge Koehn was not exposed to public scrutiny as a result of McBride's private complaints leads us to conclude that McBride's complaints, standing alone, are insufficient to demonstrate that Judge Koehn harbored actual bias against her.

In addition to examining each claim purporting to demonstrate bias individually, we must also examine the totality of the circumstances to determine whether the cumulative effect of the evidence is sufficient to establish McBride's claim that Judge Koehn was actually biased. We conclude that it does not. The circumstances of this case demonstrate at best McBride's concern that Judge Koehn would not treat her fairly. However, McBride failed to introduce any evidence showing that Judge Koehn did in fact treat her unfairly. In fact, the evidence shows that Judge Koehn's review of the warrant was dispassionate and evinced a legitimate concern for the propriety of the requested warrant. McBride's concern over Judge Koehn's impartiality is based solely on her conduct toward him. This is not sufficient to meet her burden of proving bias. Therefore, because McBride has failed to demonstrate by a preponderance of the evidence that Judge Koehn was biased against her, we conclude that McBride's challenge to the search warrant must fail.

McBride next challenges the court's failure to instruct the jury that the State must prove the value of the allegedly stolen items beyond a reasonable doubt. Count one of the complaint charged McBride with the theft of a $55,000 check, count three charged her with the theft of two checks totaling $10,854, count four charged her with the theft of a check of $8,931 and count six charged her with the theft of $13,472. McBride contends the court's failure to instruct the jury that it must determine the value of the items beyond a reasonable doubt deprived her of her Sixth Amendment right to trial by jury and her Fifth Amendment right to due process of law. Based on this claimed error, McBride filed a postconviction motion to have

her felony convictions reduced to misdemeanor convictions. The trial court denied the motion.

A party's failure to raise an objection to the instructions at trial constitutes a waiver of that party's right to raise the objection on appeal. *Gegan v. Backwinkel*, 141 Wis. 2d 893, 906, 417 N.W.2d 44, 50 (Ct. App. 1987). Once an instructional error is waived, the appellate court is powerless to entertain an objection to the instruction unless it is persuaded that the real controversy has not been fully tried or that a new trial is required in the interest of justice. *State v. Schumacher*, 144 Wis. 2d 388, 401, 424 N.W.2d 672, 677 (1988); § 752.35, STATS. Here, McBride concedes that she failed to object to the instructions both at the instructions conference and after the trial judge read the instructions to the jury. Failure to make timely objection waived McBride's objection to the instructions. *Gegan*, 141 Wis. 2d at 906, 417 N.W.2d at 50.

Due to McBride's failure to timely object, we may only reverse the trial court if we are persuaded that the real controversy has not been fully tried or that a new trial is required in the interest of justice. *See* § 752.35, STATS. We are not so persuaded.

The case was fully and fairly tried at the trial level, and McBride does not dispute that the value of the checks taken exceeded $2,500, the required value for a felony conviction. Therefore, even if we were to conclude that the trial judge did not instruct the jury that it must determine the value of the checks beyond a reasonable doubt, it did not have a substantial effect on the result of the trial. Therefore, we conclude that the interests of justice do not mandate a new trial.

420

Furthermore, if we were able to address the merits of McBride's claim, we would nevertheless affirm the judgment. Based on the totality of the instructions given by the trial court, we conclude that the jury would have reasonably understood that they were required to find the value of the property subject to the charge beyond a reasonable doubt. Our conclusion is supported by the fact that: (1) the trial court repeatedly instructed the jury that the State had the burden of proving each element[3] of the offenses charged beyond a reasonable doubt; (2) the trial judge used the words "beyond a reasonable doubt" in the instructions on seventeen different occasions; and (3) the trial court never mentioned any lesser standard of proof in the course of giving the instructions. Based on these facts, we conclude that the instructions, read in their entirety, were sufficient to apprise a reasonable jury that it was required to find the value of the property subject to the charge beyond a reasonable doubt.

Moreover, even if the court's failure to give a more specific instruction was erroneous, we conclude that

---

[3] Value is not an element of theft by fraud. Nevertheless, based on the form of the instructions, a reasonable juror would have understood that value must be proven beyond a reasonable doubt. During the instruction phase of the trial, the court read each count of the information to the jury one by one. For each count, the court expressly included the value of the check that was allegedly stolen. After each count was read, the court then instructed the jury that the State had the burden of proving each element of the charge beyond a reasonable doubt. Given the form in which the instructions were given, we conclude that a reasonable juror would have assumed that the value of the items subject to the charge were elements of the crime. Therefore, we conclude that a reasonable jury would have understood that the value of each item must be proven beyond a reasonable doubt.

the error was harmless. McBride expressly concedes in her brief that "the evidence was sufficient to support the jury's verdict that, as to each count, the value of the property stolen did exceed $2,500." Because McBride does not dispute that the evidence was sufficient to establish that the value of the property subject to the charge exceeded $2,500, this court concludes that McBride was not prejudiced by the alleged instructional error. *See Fischer by Fischer v. Ganju*, 168 Wis. 2d 834, 849, 485 N.W.2d 10, 16 (1992) ("challenge to an allegedly erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial"). Therefore, we conclude that the alleged instructional error was harmless.

McBride, however, contends that under *Sullivan v. Louisiana*, 113 S.Ct. 2078, 2082 (1993), the court's failure to specifically instruct the jury that it must find value beyond a reasonable doubt constituted a structural defect thereby depriving her of her rights under the Sixth Amendment. Therefore, she argues that the trial court's error was not harmless and that this court should reduce her conviction from a felony to a misdemeanor. We do not find McBride's argument persuasive.

*Sullivan* is applicable only where the court fails to instruct the jury that it must find the existence of an *element* of the crime beyond a reasonable doubt. *Id.* Here, however, value is not an element of the crime because it is not required in order to establish a violation of § 943.20, STATS. Value is established under § 943.20 solely for the purpose of determining the appropriate penalty. *See State v. Kennedy*, 105 Wis. 2d 625, 636, 314 N.W.2d 884, 889 (Ct. App. 1981) ("The value of the property obtained is not an element of the crime of theft by fraud, and is of importance only in

determining the applicable penalty on conviction."). Furthermore, we have already noted that if we were able to address the merits of McBride's claim, we would conclude that the court properly instructed the jury because a reasonable juror would have understood that the State must prove value beyond a reasonable doubt. Therefore, we conclude that *Sullivan* does not apply to this case. The judgment and orders are therefore affirmed.

*By the Court.*—Judgment and orders affirmed.