STATE of Wisconsin, Plaintiff-Respondent,

v.

Terrance J. O'NEILL, Defendant-Appellant.

Court of Appeals

*No. 02–0808–CR. Submitted on briefs October 11, 2002.—
Decided December 19, 2002.*

2003 WI App 73

(Also reported in 663 N.W.2d 292.)

536

On behalf of the defendant-appellant, the cause was submitted on the brief of *Roger D. Sturdevant*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, asst. attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. VERGERONT, P.J. Terrance O'Neill appeals the order denying his motion for the presiding judge, the Honorable William D. Johnston, to disqualify himself from all proceedings in this action. O'Neill contends that Judge Johnston is biased because the judge is requiring him to relitigate an issue on which O'Neill has already prevailed on appeal in another case; therefore, according to O'Neill, his due process right to an impartial judge will be violated if Judge Johnston presides in this case. The State agrees, arguing that Judge Johnston has a personal stake in the outcome of the issue litigated in the prior case, which will again need to be resolved in this case by an appellate court. We

conclude that O'Neill and the State have not established that Judge Johnston is biased. We therefore affirm.

## BACKGROUND

¶ 2. In an earlier case (case no. 00–CF-10), O'Neill was charged with two counts of arson. Judge Johnston entered a pretrial order in that case providing that the court was to give the preliminary instructions and the parties were to give opening statements to the entire pool of potential jurors before voir dire. O'Neill objected to the procedure by motion and asked the court to require the completion of jury selection before opening statements, and the State joined in the motion. The court denied the motion after a hearing.

¶ 3. O'Neill filed in this court a petition for leave to appeal the nonfinal order or, in the alternative, for the issuance of a writ of prohibition, contending that the procedure sought to be imposed by Judge Johnston violated statutory and constitutional law and was against public policy. The State agreed with O'Neill's position and asked this court to grant the petition for leave to appeal and reverse the order. We did so by summary order. We subsequently vacated that order upon correspondence from Judge Johnston asking that the circuit court have an opportunity to address the merits of O'Neill's petition. We concluded that the circuit court should have this opportunity, observing that the circuit court was a respondent to the petition for a supervisory writ under WIS. STAT. § 809.51(2).[1] The

---

[1] Under WIS. STAT. § 809.51(1), a petition for a supervisory writ is to name the court and the presiding judge as respondents, and under § 809.51(2) this court may deny the petition ex parte or may order the respondents to file a response. All

circuit court and Judge Johnston as presiding judge, through appointed counsel, filed a response to O'Neill's petition, asserting the challenged procedure did not violate any statutory or constitutional provision or public policy. We certified the issue to the supreme court, which refused certification. We then granted O'Neill's petition for leave to appeal and considered the merits. In an order dated January 14, 2002, we summarily reversed the circuit court's order denying O'Neill's request to allow voir dire and jury selection to be completed before the preliminary instructions and opening statements were given. We also dismissed as moot the petition for a writ.

¶ 4. In the decision explaining our order, we accepted without deciding the respondents' assertion that the statutes and case law did not prohibit the proposed procedure. We framed the question as whether the circuit court erroneously exercised its discretion in establishing the challenged procedure. More particularly, we asked, "when the court is proposing a procedure not expressly permitted or prohibited, how much of a deviation from traditional practices can the court reasonably require the parties to comply with over their objections?" We concluded that the proposed procedure was a significant deviation from traditional practice, both parties had voiced reasonable substantive objections to the procedure, and the circuit court had not explained why it was reasonable to require the parties to participate in nontraditional procedures against their will, apart from its opinion that the nontraditional procedure was the better procedure and supported by public policy. We observed that the public policy of Wisconsin on the question as reflected in statutes or

references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

other law had not been clearly determined. Under these circumstances, we concluded, the circuit court reached an unreasonable result when it compelled the parties to follow the nontraditional procedure. We expressly stated, "we do not imply an opinion about whether it would be better to conduct trials in the manner proposed by the circuit court . . . . [nor] an opinion on whether the court may use non-traditional procedures when the parties agree to them." Although the respondents had asked us to issue a published decision giving guidance to circuit courts, we did not issue a published decision, stating, "it may be more appropriate to seek that guidance through supreme court rulemaking or statutory amendment than by subjecting individual parties to litigation on the issue."

¶ 5. The circuit court and Judge Johnston, through counsel, filed a petition for review with the supreme court, which denied the petition on May 23, 2002.

¶ 6. While the petition for review was pending before the supreme court, the complaint in this case was issued, charging O'Neill with obstructing an officer contrary to Wis. Stat. § 946.41(1), and felony bail jumping contrary to Wis. Stat. § 946.49(1)(b). The basis for the felony bail jumping charge was O'Neill's failure to comply with the terms of his bond in case no. 00–CF-10. O'Neill moved for Judge Johnston to recuse himself in this case on the ground that the proceedings in case no. 00–CF-10 raised an inference that Judge Johnston could not perform his duties impartially and avoid impropriety or the appearance of impropriety as required by Wis. Stat. § 757.19(2)(g) and SCR 60:03 and 60:04. In addition, the motion asserted that if Judge Johnston continued to preside over this matter, it would

violate O'Neill's constitutional right to a fair trial before an impartial judge. The district attorney agreed with O'Neill's position.

¶ 7. Judge Johnston denied the motion after a hearing in a decision from the bench. He first explained his reasons for believing that the procedure challenged in case no. 00–CF-10 was desirable. He also explained that he had written the letter to this court asking for reconsideration of our initial summary reversal because, ordinarily when a petition for a supervisory writ is filed, the attorney general provides representation for the circuit court; but, since the attorney general was representing the district attorney, he had been advised by the director of state courts to write a letter to let this court know that he wanted to have the opportunity to present his position on the challenged procedure. Judge Johnston stated that our January 14, 2002 order reversing his order in case no. 00–CF-10 was not precedent for other cases, and the reason for the petition for review in the supreme court, which was then still pending, was to obtain a ruling that would clarify the law and would be precedent.

¶ 8. Judge Johnston concluded that his efforts to present his views and obtain a precedential ruling on the challenged procedure did not have anything to do with O'Neill or demonstrate any bias toward him, but rather had to do with state court procedure and the authority of the circuit court to adopt new procedures that, in the court's view, will assist the jury. He stated that there was no reason he could not act in an impartial manner and also no reason it appeared he could not act in an impartial manner; therefore, he concluded, there was no reason to recuse himself under Wis. Stat. § 757.19(2)(g) or SCR 60:03. Judge Johnston observed that he was not failing to respect and comply

542

with the law as required by SCR 60:03(1) because our January 14, 2002 order did not have precedential value for other cases, and, if the supreme court denied the petition for review, it would continue not to have precedential value. He also went through each of the provisions in SCR 60:04 and concluded that none applied. Judge Johnston emphasized that in his view the procedure challenged in case no. 00–CF-10 was a safeguard to a defendant's right to a fair and impartial trial.

¶ 9. The circuit court granted a stay of further proceedings pending resolution of O'Neill's petition for leave to appeal the nonfinal ruling in this court, and we granted the petition.

## DISCUSSION

¶ 10. On appeal, O'Neill asserts only a constitutional challenge to Judge Johnston's decision not to recuse himself. O'Neill contends that if Judge Johnston presides in this case, he, O'Neill, will be deprived of his right under the Fifth and Fourteenth Amendments to a neutral and detached judge. The State agrees with O'Neill.

¶ 11. A person's right to be tried by an impartial judge is part of the fundamental right to a fair trial guaranteed by the due process clause of the Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment. *State v. Kywanda F.*, 200 Wis. 2d 26, 35, 546 N.W.2d 440 (Ct. App. 1996).[2] Whether a trial judge is impartial, that is, a neutral and detached decision maker, is a question of law, which we review de novo. *State v. McBride*, 187

___

[2] Article I, section 7 of the Wisconsin Constitution also guarantees due process of law to a criminal defendant.

Wis. 2d 409, 414, 523 N.W.2d 106, 109 (Ct. App. 1994). We employ two tests to determine whether a defendant's due process right to a trial by an impartial judge is violated: (1) a subjective test based on the judge's own determination of his or her impartiality, and (2) an objective test that asks whether objective facts show actual bias. *Id.* at 415–16. O'Neill acknowledges that Judge Johnston has determined that he can act impartially in this matter, and that we are therefore concerned only with the objective test.

¶ 12. In applying the objective test, we presume that a judge is free of bias, and to overcome this presumption the defendant must show by a preponderance of the evidence that the judge is in fact biased. *Id.* at 415. It is not sufficient to show that there is an appearance of bias or that the circumstance might lead one to speculate that the judge is biased. *Id.* at 416.

¶ 13. O'Neill argues that Judge Johnston has demonstrated bias in these ways: (1) his focus in the appellate proceedings in case no. 00–CF-10 was on the authority of the circuit court to conduct a trial in the manner it chose rather than on the statutory and constitutional objections the parties raised to the procedure; and (2) Judge Johnston intends to require O'Neill to again litigate his right to have the traditional procedure employed, even though O'Neill has already prevailed on that issue. The State formulates what it sees as Judge Johnston's bias somewhat differently. According to the State, Judge Johnston put himself in a position adversarial to O'Neill in case no. 00–CF-10 by moving for a reconsideration of our initial summary reversal when he was not a party, and by seeking review in the supreme court. In the State's view, Judge Johnston has a "personal stake" in the outcome of the

issue of whether a circuit court has the authority to impose the challenged procedure over both parties' objection and, because this issue will arise in this case, Judge Johnston is unable to be a neutral and detached judge in this case. The State acknowledges that there is no indication that Judge Johnston has any personal animosity toward O'Neill or his attorney.

¶ 14. Judge Johnston and the parties agree that our January 14, 2002 order in case no. 00–CF-10 has no precedential value because it is not a published decision. WIS. STAT. § 809.23(3). Since the supreme court did not accept review, Judge Johnston is not bound to cease employing the challenged procedure in any case other than case no. 00–CF-10.

¶ 15. We are not persuaded by O'Neill's argument that Judge Johnston's focus on the authority of the circuit court in the appellate proceedings in case no. 00–CF-10, rather than on O'Neill's statutory and constitutional challenges, demonstrates the judge's bias. Judge Johnston's focus was on the circuit court's authority because, in his view, there was no statutory or constitutional impediment to the challenged procedure. Moreover, since on this interlocutory appeal O'Neill is not arguing the merits of his challenge to the procedure, we have no basis for concluding on this appeal that the challenged procedure is so antithetical to a fair trial that Judge Johnston's intent to continue to use the procedure, in itself, demonstrates a disregard of O'Neill's right to a fair trial.

¶ 16. We also do not agree with O'Neill that Judge Johnston's intent to use the challenged procedure in

this case, even though O'Neill prevailed in case no. 00–CF-10, demonstrates a bias against O'Neill. It is true that, as a result of Judge Johnston's decision to use the challenged procedure in this case, O'Neill may again have to appeal to this court. However, Judge Johnston is not deciding to use the challenged procedure in this case because O'Neill is the defendant: Judge Johnston evidently intends to continue his use of the challenged procedure in every case, other than case no. 00–CF-10, until either this court orders that he may not do so in a particular case, or this court or the supreme court issues a precedential decision holding that he may not do so in any case. Judge Johnston is not treating O'Neill any differently than he is any other defendant; it simply happens that O'Neill is again a defendant in another criminal case over which Judge Johnston is presiding.

¶ 17. We next address the State's argument that Judge Johnston was an adversarial party to O'Neill in case no. 00–CF-10, and his personal stake in the outcome of the issue of the challenged procedure's validity prevents him from being a neutral and detached judge in this case. At the outset, we reject the State's suggestion that it was inappropriate for Judge Johnston to seek reconsideration of our initial summary reversal in case no. 00–CF-10 and to seek review in the supreme court because he was not a party to the petition for leave to appeal. O'Neill filed a petition for leave to appeal and, in the alternative, a petition for a writ of prohibition against the circuit court. We concluded that the circuit court, as a respondent to the writ petition, should have the opportunity to respond, and the State has cited no authority suggesting that decision was incorrect. We also observe that the presiding judge and the circuit court are both proper respondents to a

546

petition for a supervisory writ. Wɪs. Sᴛᴀᴛ. § 809.51(1). Ordinarily, respondents to a petition for a writ of prohibition do not have a reason to seek supreme court review of an order from this court dismissing the petition, but in this case our reason for dismissal was mootness—because we had resolved the interlocutory appeal in O'Neill's favor. The State has provided us with no authority to support its suggestion that in these circumstances it was inappropriate for Judge Johnston to petition for supreme court review.

¶ 18. It is true, as the State contends, that Judge Johnston's position in case no. 00–CF-10 was adversarial to O'Neill's position. However, the issue as we framed it in our January 14, 2002 order was the authority of the circuit court to impose a non-traditional procedure when both parties objected. The issue concerns the authority of all circuit courts—not just Judge Johnston's authority. Judge Johnston believes in the benefits of the challenged procedure and the authority of the circuit court to impose it over the objection of both parties. We do not agree that this constitutes a "personal stake" in the outcome of the issue. His "stake" is that of a circuit court judge who has a legal position that a particular court procedure is both permissible and beneficial.

¶ 19. We agree with the State that a judge's non-pecuniary interest, as well as a pecuniary interest, may require recusal on due process grounds, *see Aetna Life Insurance Co. v. LaVoie*, 475 U.S. 813, 829 (1986) (Brennan, J. concurring); and the type of interest that requires recusal cannot be defined with precision. *In re Murchison*, 349 U.S. 133, 136 (1955). However, in the context of applying federal rules requiring recusal for

bias, federal courts have made clear that a judge's prior adverse rulings or expressions of the judge's views of the law are not sufficient to demonstrate a "personal" bias that requires recusal. *See, e.g., City of Cleveland v. Cleveland Elec. Illuminating Co.*, 503 F. Supp 368, 373–74 (N.D. Ohio 1980); *Person v. General Motors Corp.*, 730 F. Supp. 516, 518–19 (W.D.N.Y. 1990). Our reasoning is similarly grounded: Judge Johnston's legal position on the permissibility of the challenged procedure and his conviction of the wisdom of the procedure, however firmly held, are not a bias that indicates he is unable to be a neutral and detached judge in this case. Moreover, we do not see how Judge Johnston's "stake" in the outcome of the issue affects his ability to be neutral in this case. The outcome will be determined by this court or the supreme court, and Judge Johnston has made it clear he will follow any order or decision of this court or the supreme court as the law requires him to do.

¶ 20. We conclude that Judge Johnston's interest in the outcome of the issue of the challenged procedure's validity does not show actual bias, nor does his participation in case no. 00–CF-10, nor does his intent to impose the challenged procedure again in this case in the absence of an appellate order or precedential decision requiring that he not do so. Accordingly, we affirm the order denying O'Neill's motion for Judge Johnston to disqualify himself.

*By the Court.*—Order affirmed.