ANNETTE KINGSLAND ZIEGLER, J.
¶ 112. (concurring). I agree with the lead opinion's conclusion that Jesse Herrmann has not shown that the sentencing judge, Judge Ramona A. Gonzalez, was objectively biased in violation of due process. I write to clarify the due process recusal test. Citing cases including Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), the lead opinion states that "[a] defendant may rebut the presumption [that a judge acted fairly, impartially, and without prejudice] by showing that the appearance of bias reveals a great risk of actual bias." Lead op., ¶ 3. However, due process requires recusal only if a judge is actually biased or if a "rare" or an "exceptional case" with "extreme facts" creates a "serious risk of actual bias." Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 883-84, 886-88, 890.
¶ 113. Caperton concludes that objective proof of actual bias or the probability of a serious risk of actual bias must exist before recusal is required. Caperton, 556 U.S. at 883-84. Stated otherwise, it is not reasonable to question a judge's impartiality unless one can prove by objective evidence that actual bias or the probability of a serious risk of actual bias exists. See id. at 884.
f 114. The recusal test to be applied is the test explained by the Supreme Court in Caperton, which requires a "rare" or an "exceptional case" with "extreme facts" that create a "serious risk of actual bias." Caperton, 556 U.S. at 883-84, 886-88, 890. If the test *378 were only whether an appearance of bias existed, and nothing more extreme or exceptional were required, then this record would support the defendant's contention that Judge Gonzalez should have recused herself. To succeed on a due process claim, much more is required.
¶ 115. Accordingly, I write to discuss the due process test of Caperton. I note that the Judicial Code[1] and the disqualification statute provide for specific factual circumstances under which a judge must recuse, even when that judge could be completely fair. See, e.g., Supreme Court Rule ("SCR") 60.04(4)(a) to (f); Wis. Stat. § 757.19(2)(a) to (f).[2] Caperton makes clear *379 that a judge need not recuse simply because someone claims that the judge is partial. In other words, Caperton concludes that a reasonable, well-informed person, knowledgeable about judicial ethical standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know, would reasonably question the judge's ability to be impartial because of actual bias or the probability of a serious risk of actual bias. Such circumstances are exceedingly rare.[3]
¶ 116. Because we are bound by the Supreme Court precedent in Caperton when applying the due process clause of the United States Constitution, it is important to clearly set out the Caperton test so that those who consider seeking judicial recusal will be well-informed, as will the judges who decide recusal motions. Further, because "motions to disqualify a justice from participating in a particular case have increased dramatically since the United States Supreme Court decided Caperton," State v. Henley, 2011 WI 67, ¶ 10, 338 Wis. 2d 610, 802 N.W.2d 175, it *380 is important to recognize that Caperton's holding is very limited. Caperton will be discussed in more detail.
I. DISCUSSION
¶ 117. "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955). " 'Due process requires a neutral and detached judge. If the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment.'" State v. Rochelt, 165 Wis. 2d 373, 378, 477 N.W.2d 659 (Ct. App. 4 1991) (quoting State v. Washington, 83 Wis. 2d 808, 833, 266 N.W.2d 597 (1978)). "The operation of the due process clause in the realm of judicial impartiality, then, is primarily to protect the individual's right to a fair trial." People v. Freeman, 222 P.3d 177, 181 (Cal. 2010). "We presume that judges are impartial," and someone who challenges a judge's impartiality bears a heavy burden to "rebut that presumption." State v. Pinno, 2014 WI 74, ¶ 103, 356 Wis. 2d 106, 850 N.W.2d 207.
¶ 118. "[W]hile a showing of actual bias is not required for judicial disqualification under the due process clause, neither is the mere appearance of bias sufficient." Freeman, 222 P.3d at 178. In a due process recusal challenge, " [i]t is not sufficient to show that there is an appearance of bias or that the circumstance might lead one to speculate that the judge is biased." State v. O'Neill, 2003 WI App 73, ¶ 12, 261 Wis. 2d 534, 663 N.W.2d 292 (citing State v. McBride, 187 Wis. 2d 409, 416, 523 N.W.2d 106 (Ct. App. 1994)).
¶ 119. "Instead, based on an objective assessment of the circumstances in the particular case, there must exist 'the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be *381 constitutionally tolerable.1" Freeman, 222 P.3d at 178 (quoting Caperton, 556 U.S. at 877) (quotation marks omitted). In other words, this objective assessment "asks whether objective facts show actual bias." O'Neill, 261 Wis. 2d 534, ¶ 11 (citing McBride, 187 Wis. 2d at 415-16). "Thus, actual bias — either its presence, or the great risk of it — is the underlying concern of objective bias [due process] analysis." State v. Goodson, 2009 WI App 107, ¶ 14, 320 Wis. 2d 166, 771 N.W.2d 385. The Supreme Court in Caperton "emphasized that only the most 'extreme facts' would justify judicial disqualification based on the due process clause." Freeman, 222 P.3d at 178 (quoting Caperton, 556 U.S. at 886-89). Accordingly, when a litigant asserts actual bias, he or she must show extreme facts such as those in Caperton. See id.
¶ 120. "Where only the appearance of bias is at issue, a litigant's recourse is to seek disqualification under state disqualification statutes: 'Because the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution.' " Id. (quoting Caperton, 556 U.S. at 890). Wisconsin's Judicial Code and disqualification statute aim to prevent the appearance of bias by requiring recusal in specifically described factual situations even though the judge is actually unbiased.[4] See, e.g., SCR 60.04(4)(a) to (f); Wis. Stat. § 757.19(2)(a) to (f); see also Pinno, 356 Wis. 2d 106, ¶ 97 (holding that the Judicial Code did not require recusal and noting that the judge *382 had an "appearance of impartiality"); In re Disciplinary Proceedings Against Crosetto, 160 Wis. 2d 581, 583-84, 466 N.W.2d 879 (1991) (holding that the disqualification statute did not require recusal because there was no "appearance of a lack of impartiality"). For example, recusal is required when "[t]he judge of an appellate court previously handled the action or proceeding as judge of another court." SCR 60.04(4)(b); see also Wis. Stat. § 757.19(2)(e) (requiring recusal of "a judge of an appellate court [who] previously handled the action or proceeding while judge of an inferior court"). Specifically defined requirements of recusal in SCR Ch. 60 and the disqualification statute are not at issue in this case because Herrmann's challenge is under the more general notion of reasonableness as it intersects with due process protection.
¶ 121. Thus, I analyze the circumstances when recusal is sought based on what is sometimes referred to as the "reasonable person" standard. When such a challenge is made, the burden is to show a "rare" or an "extraordinary situation" with "extreme" facts that create a "serious, objective risk of actual bias," such that it is the limited situation where recusal is required, as was demonstrated under the unique facts of Caperton. See Caperton, 556 U.S. at 886-87, 890. The Supreme Court made clear that it is a "rare instance []" indeed where a judicial officer is required to recuse when no rule specifies factual circumstances that call for recusal. Id. at 890.
¶ 122. If due process required a judge to recuse because of an appearance of bias, then what is unreasonable about Herrmann thinking that Judge Gonzalez appeared biased based on her statements such that she must recuse? In 1976 a drunk driver struck a car holding five young women, killing four of *383 them. One of the women who died was Judge Gonzalez's sister. Herrmann drove his truck while intoxicated and rear-ended a car carrying five young women. Herrmann's accident killed one of the young women and seriously injured the other four. During Herrmann's sentencing hearing, Judge Gonzalez stated:
In 1976 five young women got into a vehicle, and only one of them survived. The two gentlemen in the other vehicle were 17, drunk out of their minds, and they did not survive. That was my personal story, and I will tell you that a day does not go by that I do not think of that personal tragedy, and I wish that I could tell these victims that that pain will one day disappear, but it doesn't.
Judge Gonzalez further stated:
Perhaps it is again destiny or a higher power . .. that bring[s] me to be the judge on this particular case because I probably more than anyone else who would be able to sit on this bench in this county understand the pain that these victims are feeling, but I have had the benefit of all those years since 1976 to understand that I have to make Mr. Herrmann pay ....
¶ 123. Because a complete understanding of Caperton is so important to understanding a judge's obligations upon being moved to recuse, I now turn to Caperton.
¶ 124. As the following discussion shows, Caperton's very limited holding does not allow "an attack on virtually any ju[dge] for nearly any reason and [does not] allow litigants to 'pick their court' by filing recusal motions against certain ju[dges] and not others." State v. Allen, 2010 WI 10, ¶ 260, 322 Wis. 2d 372, 778 N.W.2d 863 (Ziegler, J., concurring). "Such an *384 expansion of Caperton could cause gridlock in the court and delay justice being dispensed. The Supreme Court made clear that it did not intend such consequences." Id. In fact, the Supreme Court noted that "[n]ot every campaign contribution by a litigant or [an] attorney creates a probability of bias that requires a judge's recusal, but this is an exceptional case."[5] Caperton, 556 *385 U.S. at 884. The exceptional circumstances of Caperton demonstrated the probability of a serious risk of actual bias that the Court determined that there was a due process violation. The Supreme Court noted that such a violation would indeed be "rare." Id. at 890. A campaign contribution or expenditure alone does not result in a due process violation. Even the large expenditure in Caperton was but one of many factors that, collectively, were fundamental to the Court's decision. In Caperton the Court did not conclude that, standing alone, a lawful contribution, large expenditure, or other significant support in a campaign would require a judge to recuse.
| 125. For purposes of clarification, in Wisconsin, a judicial candidate may not even solicit or accept campaign contributions. In other words, it is fundamental that a judicial candidate cannot ask anyone for any campaign money. SCR 60.06(4) ("A judge, candidate for judicial office, or judge-elect shall not personally solicit or accept campaign contributions.").
¶ 126. In addition, a judicial candidate certainly cannot control whether a third party expends resources in an attempt to affect the outcome of a contested seat. Caperton was decided before Citizens United v. Federal Election Commission, in which the United States Supreme Court struck down as unconstitutional, under the First Amendment, a federal law that prohibited corporations from making independent expenditures for speech that expressly advocates the election or defeat of a candidate. Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 365-66 (2010).
¶ 127. Thus, even if a judicial candidate were to publicly request that third parties not spend money to *386 support his or her campaign or to discredit an opponent's campaign, the First Amendment entitles third parties to do so anyway. See id. If a campaign contribution or an independent expenditure in a campaign were enough to require recusal, no sensible stopping point would exist. Sometimes people support a judicial candidate by directly contributing to his or her campaign. Sometimes people do not support a judicial candidate and directly contribute to an opponent's campaign. Sometimes third parties exercise their First Amendment rights to either support or discredit a judicial candidate. Should all of these circumstances require recusal? Does one scenario require recusal more than the others, if a "reasonable person" says so?
¶ 128. The Court in Caperton recognized that the answer to those questions is "no" and that it is a rare and exceptional circumstance wherein much more must be proved before a judge must recuse. Extreme circumstances must converge so as to create the probability of a serious risk of actual bias. Caperton, 556 U.S. at 884. If Caperton were to have required any less, there would be no sensible stopping point for a judge's duty to recuse. "Caperton involved extreme and extraordinary facts which the Supreme Court recognized in its majority opinion no less than a dozen times." Allen, 322 Wis. 2d 372, ¶ 261 (Ziegler, J., concurring); see also id., ¶ 263 n.4 (identifying a dozen times where Caperton highlighted that case's extreme and extraordinary facts); State v. Henley, 2011 WI 67, ¶ 33, 338 Wis. 2d 610, 802 N.W.2d 175 ("[A]s the United States Supreme Court repeatedly said in its decision in Caperton, that decision is based on extraordinary and extreme facts.").
¶ 129. The "extreme facts" that amounted to a due process violation in Caperton began with a $50 *387 million jury verdict that was entered in favor of Caperton and against A.T. Massey. Caperton, 556 U.S. at 872. "After the verdict but before the appeal, West Virginia held its 2004 judicial elections." Id. at 873. Five justices sit on the West Virginia Supreme Court of Appeals. Id. at 874-75. Whoever won the West Virginia Supreme Court of Appeals' 2004 election would most certainly be on the court when it decided whether to sustain or overturn this $50 million verdict against A.T. Massey. Id. at 873.
¶ 130. Donald Blankenship, who was A.T. Massey's chairman, chief executive officer, and president, "[knew] that the Supreme Court of Appeals of West Virginia would consider the appeal in the case." Id. Blankenship spent $3 million to support the election of Brent Benjamin, an attorney who was running against Justice Warren McGraw for a seat on the West Virginia Supreme Court of Appeals. Id. Specifically, Blankenship "contributfed] the $1,000 statutory maximum to Benjamin's campaign committee"; Blankenship donated almost $2.5 million to a political organization that supported Benjamin's campaign and opposed Justice McGraw's campaign[6]; and Blankenship additionally spent "just over $500,000 on independent expenditures — for direct mailings and letters soliciting donations as well as television and newspaper *388 advertisements — to support. . . Brent Benjamin." Id. (ellipsis in original) (quotation marks omitted).
¶ 131. Blankenship's $3 million of expenditures supporting the election of Benjamin, who if elected would be on the West Virginia Supreme Court of Appeals when it decided the pending case involving Blankenship's company, dwarfed all other spending in the election. In particular, Blankenship's $3 million of expenditures supporting Benjamin were "more than the total amount spent by all other Benjamin supporters and three times the amount spent by Benjamin's own committee." Id. "Caperton contended] that Blankenship spent $1 million more than the total amount spent by the campaign committees of both candidates combined." Id. In short, Blankenship spent $3 million in support of Benjamin, all of Benjamin's other supporters collectively spent less than $3 million on independent expenditures in support of Benjamin, Benjamin's campaign committee spent $828,663,[7] and Justice McGraw's campaign committee spent $1,313,861.[8] See id.
¶ 132. In addition, the United States Supreme Court noted that the election results were not a landslide victory. Id. A total of 716,337 people voted in the West Virginia Supreme Court of Appeals race. See id. Benjamin was elected with a narrow margin of 53.3% of the votes. Id. Benjamin defeated his opponent by fewer than 50,000 votes (Benjamin received 382,036 votes and Justice McGraw received 334,301). Id.
*389 ¶ 133. Approximately 11 months after Justice Benjamin won the election, and shortly before A.T. Massey filed its petition for appeal, Caperton moved to disqualify Justice Benjamin in the particular case that was pending the entire election between A.T. Massey and Caperton. Id. at 873-74. Caperton argued that the due process clause required Justice Benjamin's recusal "based on the conflict caused by Blankenship's campaign involvement." Id. at 874. Justice Benjamin denied the recusal motion. Id. The West Virginia Supreme Court of Appeals, by a 3-to-2 vote, reversed the $50 million verdict against A.T. Massey. Id. Justice Benjamin joined the majority opinion. Id.
¶ 134. "Caperton sought rehearing, and the parties moved for disqualification of three of the five justices who decided the appeal." Id. In particular, Caperton again moved to disqualify Justice Benjamin. Id. at 875. Justice Benjamin denied the motion. Id. Justice Elliot Maynard, who joined the three-justice majority opinion, granted Caperton's recusal motion because "[p]hotos had surfaced of Justice Maynard vacationing with Blankenship in the French Riviera while the case was pending." Id. at 874. Justice Larry Starcher, one of the two dissenting justices, "granted [A.T.] Massey's recusal motion, apparently based on his public criticism of Blankenship's role in the 2004 elections." Id. at 874-75. The West Virginia Supreme Court of Appeals subsequently granted rehearing. Id. at 875. Justice Benjamin, then serving as acting chief justice, selected two West Virginia circuit judges to replace the two recused justices on the case between Caperton and A.T. Massey. Id. Accordingly, unlike a justice in Wisconsin, Justice Benjamin could have been replaced had he recused himself. See id. at 874-75. The West Virginia Supreme Court of Appeals again voted *390 3-to-2 to reverse the $50 million verdict against A.T. Massey. Id. at 875. Justice Benjamin again joined the majority. Id. Caperton petitioned the United States Supreme Court to review Justice Benjamin's denial of its recusal motions.
¶ 135. The United States Supreme Court granted certiorari to determine "whether the Due Process Clause of the Fourteenth Amendment was violated when [Justice Benjamin] denied a recusal motion." Id. at 872. The Supreme Court determined "that, in all the circumstances of [that] case, due process require[d] recusal." Id.
¶ 136. The United States Supreme Court concluded that there was a serious risk of Justice Benjamin's actual bias in sitting on Caperton because: (1) the case had been pending since before Justice Benjamin was elected; (2) the jury verdict in that case was $50 million; (3) if elected, Justice Benjamin would be sitting on the court that would review this $50 million verdict; (4) Blankenship's extraordinary $3 million expenditures supporting Benjamin dwarfed the amount spent by both campaign committees combined; (5) Blankenship's $3 million expenditures exceeded the expenditures of all other Benjamin supporters combined; and (6) Blankenship's $3 million expenditures had a "significant and disproportionate influence" in helping Benjamin win a close election. See Caperton, 556 U.S. at 883-86. The Supreme Court emphasized that "[t]he temporal relationship between the campaign contributions, the justice's election, and the pendency of the case [was] also critical." Id. at 886.
¶ 137. The Supreme Court made clear that no one factor alone — or anything short of this combination of factors — would have constituted a due process *391 violation so to require recusal. In that regard, the Supreme Court noted that its holding was based on "all the circumstances of [that] case . . . ." Id. at 872. The Court further noted that "[application of the constitutional standard implicated in [Caperton] will [] be confined to rare instances." Id. at 890.
¶ 138. "[N]owhere in the Caperton decision does the Supreme Court state that any lesser fact situation would have required Justice Benjamin's recusal in that case, and nowhere does the Supreme Court conclude that he would be required to recuse himself from an unrelated civil case that involved different parties." Allen, 322 Wis. 2d 372, ¶ 269 (Ziegler, J., concurring). "To suggest that Caperton says otherwise is to invent new law and to invite recusal motions based upon 'spin' instead of whether a justice can be fair and impartial. Such practice is destructive to the credibility of the court, as justices are always presumed to be fair and impartial." Id. "To be clear, nowhere in Caperton does the majority state that anything less than this 'perfect storm,1 created by those extreme and extraordinary facts coupled with the timing of the election and the parties' pending case, would be sufficient to constitute a due process violation." Id.
¶ 139. In short, the Supreme Court in Caperton expressly recognized that its holding was limited by the rare nucleus of facts presented in that case. The Court, when considering the objective test, which Wisconsin adopted in State v. Asfoor, 75 Wis. 2d 411, 436, 249 N.W.2d 529 (1977),[9] stated:
*392 We conclude that there is a serious risk of actual bias — based on objective and reasonable perceptions— when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent.
Caperton, 556 U.S. at 884. In other words, it was not the $3 million dollar expenditure alone that required recusal. Id. at 883-86. Accordingly, the due process test for judicial recusal set forth in Caperton was met because those extraordinary and extreme facts converged in a pending case where one person's contributions had a "significant and disproportionate influence" on a close election. See id.; see also Allen, 322 Wis. 2d 372, ¶¶ 261-262, 269, 271 (Ziegler, J., concurring) (recognizing the limits of Caperton); Henley, 338 Wis. 2d 610, ¶¶ 32-33 (same).
¶ 140. In accord with Caperton, the "reasonable person" recusal standard is controlled by the objective due process recusal test explained in Caperton. Indeed, more than 30 years ago this court defined the Judicial Code's reasonable person recusal standard as synonymous with the objective due process recusal test. See State v. Walberg, 109 Wis. 2d 96, 105-06, 325 N.W.2d 687 (1982) (applying the reasonable person standard from the Judicial Code to determine whether a judge's failure to recuse himself violated the objective due process recusal test). That test has been further explained by Caperton wherein the Supreme Court cautioned that the objective due process test requires recusal only in an "exceptional case" with "extreme facts" that create a "serious risk" of actual bias. See Caperton, 556 U.S. at 884, 886-88; see also Freeman, 222 P.3d at 184 (citing Caperton, 556 U.S. at 889-90).
*393 ¶ 141. If a judge were required to recuse whenever a person could conjure a reason to question a judge's impartiality, a judge could be attacked without a standard on which to evaluate the attack. We have rejected a loose and standardless test, as the Supreme Court in Caperton did, in no small part because it would invite mischief and judge shopping.[10] See Henley, 338 Wis. 2d 610, ¶ 35; Allen, 322 Wis. 2d 372, ¶¶ 260-262 (Ziegler, J., concurring); Donohoo v. Action Wisconsin Inc., 2008 WI 110, ¶¶ 29-30, 314 Wis. 2d 510, 754 N.W.2d 480. As demonstrated by our conclusion that recusal was not required in Donohoo, Henley, Pinno, and similar cases,[11] the recusal standard is the one set forth in Caperton, which requires the challenger to demonstrate by objective proof that actual bias or the probability of a serious risk of actual bias exists. See Caperton, 556 U.S. at 883-84, 886-87.
¶ 142. When a recusal motion is brought, the movant bears a burden "to overcome the presumption of impartiality." Pinno, 356 Wis. 2d 106, ¶ 97. Interpreting the reasonable person standard more broadly than Caperton's due process recusal test would turn the movant's burden of proof on its head. The objective due process recusal test asks whether there are "extreme facts" in an "exceptional case" where, "based on objective and reasonable perceptions," "there is a serious risk of actual bias." Caperton, 556 U.S. at 884, 886-88.
*394 ¶ 143. In Pinno, a consolidated opinion, one of the defendants, Travis Seaton, was convicted of first-degree reckless homicide as a repeater. Id., ¶ 11. He filed a post-conviction motion in which he argued "that his sentence was too harsh, reasserted his argument that one of the jurors was biased, and argued that 'other acts evidence' was used improperly." Id., ¶ 18. The circuit court, Judge Richard J. Nuss presiding, who also presided over the trial, denied the motion. Id., ¶¶ 2, 18. The court of appeals affirmed. Id., ¶ 18. Seaton then filed another post-conviction motion, in which he "argued for the first time that his Sixth Amendment right to a public trial was violated. In the alternative, Seaton argued that his counsel was ineffective for failing to object to the closure of the courtroom." Id., ¶ 19. Seaton also filed a motion requesting that Judge Nuss recuse himself from ruling on the post-conviction motion. Id., ¶ 22. Judge Nuss denied the recusal motion and post-conviction motion. Id., ¶ 24.
¶ 144. On appeal, we held that "Judge Nuss properly denied Seaton's recusal motion." Id., ¶ 97. First, Seaton argued that the judicial disqualification statute, Wis. Stat. § 757.19(2), required Judge Nuss's recusal. See id., ¶ 93. Because no specifically described factual circumstance set out in Wis. Stat. § 757.19(2)(a) to (f) was applicable, we concluded that "[t]he relevant recusal standard in the Wisconsin Statutes is a subjective one," namely § 757.19(2)(g). See id. We had to determine "objectively whether [Judge Nuss] actually made the subjective determination" that he could remain on the case. Id. We concluded that "Judge Nuss determined that he was not biased; therefore, he complied with § 757.19(2)(g)."[12] Id.
*395 ¶ 145. Next, we examined Ch. 60 of the Supreme Court Rules ("SCR") — Wisconsin's Judicial Code — to analyze Seaton's recusal claim. Id,., ¶¶ 95-96. We concluded that SCR Ch. 60 did not require recusal because "[n]one of SCR 60.04(4)'s enumerated circumstances fits the facts" presented. Id., ¶ 96.
¶ 146. We also concluded that the due process test from Caperton did not require Judge Nuss's recusal. Id., ¶ 94. We reasoned that "Judge Nuss's conduct does not approach the extreme circumstances that violate due process." Id. In other words, the defendant-movant did not demonstrate a Caperton-type extraordinary circumstance with extreme facts that created a strong risk of actual bias. In short, we held that Judge Nuss properly denied the recusal motion because (1) he determined that he was not biased; (2) his situation did not match any of the specific situations enumerated in Wis. Stat. § 757.19(2) or SCR 60.04(4); and (3) there were no "extreme circumstances that violate[d] due process" as there were in Caperton.[13] See id., ¶¶ 93-97.
*396 ¶ 147. In the present case, Judge Gonzalez expressly determined that she could be impartial, and it is undisputed that none of the specific situations enumerated in SCR Ch. 60 or Wis. Stat. § 757.19(2)(a) to (f) are applicable. Accordingly, in order for Judge Gonzalez to have been required to recuse, Herrmann would have had to prove actual bias or the probability of a serious risk of actual bias, as explained in Caperton. See also id., ¶¶ 92—97; Henley, 338 Wis. 2d 610, ¶¶ 10-17, 32-35; Allen, 322 Wis. 2d 372, ¶¶ 260-264 (Ziegler, J., concurring); Donohoo, 314 Wis. 2d 510, ¶¶ 19-28.
¶ 148. In light of Caperton, the Wisconsin Court of Appeals' application of the due process test in Goodson and Gudgeon is called into question. Caperton undermines the validity of Goodson and Gudgeon and at the very least it tailors those cases to the conflict therein which may be otherwise prohibited even if not a due process violation.[14] The United States Supreme Court in Caperton has further refined the Goodson and Gudgeon analysis such that we now must review whether recusal is required due to extreme and excep *397 tional circumstances as were present in Caperton, and we now know that such circumstances will rarely be demonstrable. See Caperton, 556 U.S. at 887, 890.
¶ 149. In line with our reasoning today, the California Supreme Court recently explained in a unanimous opinion how Caperton's "application is limited" to its probability of actual bias and that due process does not require recusal for a "mere appearance" of impropriety. Freeman, 222 P.3d at 178, 184. I agree. Mere appearance of bias cannot meet the high standard set forth in Caperton. The California Supreme Court reasoned that the United States Supreme Court in Caperton "made it abundantly clear that the due process clause should not be routinely invoked as a ground for judicial disqualification. Rather, it is the exceptional case presenting extreme facts where a due process violation will be found." Id. at 184 (citing Caperton, 556 U.S. at 889-90).
¶ 150. In Freeman the defendant appeared before Judge Robert O'Neill for a pre-trial hearing in which she sought new counsel. Id. at 179. At the hearing, the defendant informed Judge O'Neill of "rumors" that the defendant was stalking Judge Elias, a colleague and long-time friend of Judge O'Neill. Id. Judge O'Neill stated that Judge Elias "is a friend of mine" and therefore recused himself from the defendant's case. Id. After the stalking rumors proved unfounded, the defendant's case was reassigned to Judge O'Neill. Id. at 180. Judge O'Neill then presided over the defendant's trial, the defendant was convicted, and Judge O'Neill sentenced her.[15] Id. The defendant appealed, and "[t]he Court of Appeal re *398 versed defendant's conviction on the ground that defendant's due process rights were violated by Judge O'Neill's failure to disqualify himself when the case was reassigned to him." Id.
¶ 151. On review, the California Supreme Court reversed the court of appeal's decision, holding that "this case does not present the 'extreme facts' that require judicial disqualification on due process grounds." Id. at 179. The California Supreme Court noted that it granted review "to determine whether the appearance of bias by a judge requires recusal under the due process clause of the federal Constitution." Id. at 178. It held that "while a showing of actual bias is not required for judicial disqualification under the due process clause, neither is the mere appearance of bias sufficient." Id. "Where only the appearance of bias is at issue, a litigant's recourse is to seek disqualification under state disqualification statutes [.]" Id. "Less extreme cases — including those that involve the mere appearance, but not the probability, of bias — should be resolved under more expansive disqualification statutes and codes of judicial conduct." Id. at 185 (citing Caperton, 556 U.S. at 889-90).[16]
*399 ¶ 152. The California Supreme Court explained that the defendant could have sought recusal under California's disqualification statute because "an explicit ground for judicial disqualification in California's statutory scheme is a public perception of partiality, that is, the appearance of bias." Id. at 181 (citations omitted). "By contrast, the United State Supreme Court's due process case law focuses on actual bias. This does not mean that actual bias must be proven to establish a due process violation." Id. "Rather, consistent with its concern that due process guarantees an impartial adjudicator, the [United States Supreme Court] has focused on those circumstances where, even if actual bias is not demonstrated, the probability of bias on the part of a judge is so great as to become 'constitutionally intolerable.'" Id. at 181-82 (quoting Caperton, 556 U.S. at 882) (quotation marks omitted). Although Judge O'Neill was a friend of an alleged victim of the defendant's stalking, "[t]his case does not implicate any of the concerns — pecuniary interest, enmeshment in contempt proceedings, or the amount and timing of campaign contributions — which were the factual bases for the United States Supreme Court's decisions in which it found that due process required judicial disqualification." Id. at 185.
While it is true that dicta in these decisions may foreshadow other, as yet unknown, circumstances that might amount to a due process violation, that dicta is bounded by repeated admonitions that finding such a *400 violation in this sphere is extraordinary; the [due process] clause operates only as a 'fail-safe' and only in the context of extreme facts.

Id.

¶ 153. A judge should recuse when required to do so and should not recuse when recusal is not required. Wisconsin Supreme Court justices need to be particularly mindful of when they must recuse and when recusal is not required. Unlike Justice Benjamin in Caperton, Judge O'Neill in Freeman, a Wisconsin Circuit Court judge, or a Wisconsin Court of Appeals judge, a Wisconsin Supreme Court justice who recuses cannot be replaced. Thus, recusal has far-reaching consequences and leaves the citizens of the state without full supreme court consideration in a case of statewide significance.
¶ 154. Complications that may occur when a full supreme court does not consider a case are self-evident. Citizens of the state deserve to have the entire supreme court decide all cases unless extreme circumstances require otherwise. Unlike a circuit court or the court of appeals, the supreme court serves a law development purpose; therefore, cases before the supreme court impact more than parties then before the court. The Rule of Necessity, which requires that justices sit on a case if "necessary," further demonstrates the heightened need for justices to remain on a case even when the path of least resistance may be to recuse.[17] The decision to recuse cannot be made lightly or out of fear of reprisal.
*401 ¶ 155. Thus, Wisconsin Supreme Court justices may weigh and balance the need for recusal somewhat differently than a trial court or intermediate appellate court judge. As a comment in Wisconsin's Judicial Code aptly explains:
Involuntary recusal of judges has greater policy implications in the supreme court than in the circuit court and court of appeals. Litigants have a broad right to substitution of a judge in circuit court. When a judge withdraws following the filing of a substitution request, a new judge will be assigned. When a judge on the court of appeals withdraws from a case, a new judge also is assigned. When a justice of the supreme court withdraws from a case, however, the justice is not replaced. Thus, the recusal of a supreme court justice alters the number of justices reviewing a case as well as the composition of the court. These recusals affect the interests of non-litigants as well as non-contributors, inasmuch as supreme court decisions almost invariably have repercussions beyond the parties.
SCR 60.04(7) cmt.
¶ 156. Similarly, Chief Justice John G. Roberts has explained that justices on the United States Supreme Court should be more hesitant to grant recusal motions than federal district and federal circuit court judges:
Although a Justice's process for considering recusal is similar to that of the lower court judges, the *402 Justice must consider an important factor that is not present in the lower courts. Lower court judges can freely substitute for one another. If an appeals court or [a federal] district court judge withdraws from a case, there is another federal judge who can serve in that recused judge's place. But the Supreme Court consists of nine Members who always sit together, and if a Justice withdraws from a case, the Court must sit without its full membership. A Justice accordingly cannot withdraw from a case as a matter of convenience or simply to avoid controversy. Rather, each Justice has an obligation to the Court to be sure of the need to recuse before deciding to withdraw from a case.
John G. Roberts, Chief Justice, U.S. Supreme Court, 2011 Year-End Report on the Federal Judiciary, at 9 (Dec. 31, 2011) (emphasis added), available at http://www.supremecourt.gov/publicinfo/year-end /20 llyear-endreport.pdf.
II. CONCLUSION
¶ 157. I agree with the lead opinion's conclusion that Jesse Herrmann has not shown that the sentencing judge, Judge Ramona A. Gonzalez, was objectively biased in violation of due process. I write to clarify the due process recusal test. Citing cases including Caperton, 556 U.S. 868, the lead opinion states that "[a] defendant may rebut the presumption [that a judge acted fairly, impartially, and without prejudice] by showing that the appearance of bias reveals a great risk of actual bias." Lead op., ¶ 3. However, due process requires recusal only if a judge is actually biased or if a "rare" or an "exceptional case" with "extreme facts" creates a "serious risk of actual bias." Caperton, 556 U.S. at 883-84, 886-88, 890.
¶ 158. Caperton concludes that objective proof of actual bias or the probability of a serious risk of actual *403 bias must exist before recusal is required. Caperton, 556 U.S. at 883-84. Stated otherwise, it is not reasonable to question a judge's impartiality unless one can prove by objective evidence that actual bias or the probability of a serious risk of actual bias exists. See id. at 884.
¶ 159. The recusal test to be applied is the test explained by the Supreme Court in Caperton, which requires a "rare" or an "exceptional case" with "extreme facts" that create a "serious risk of actual bias." Caperton, 556 U.S. at 883 — 84, 886 — 88, 890. If the test were only whether an appearance of bias existed, and nothing more extreme or exceptional were required, then this record would support the defendant's contention that Judge Gonzalez should have recused herself. To succeed on a due process claim, much more is required.
¶ 160. Accordingly, I write to discuss the due process test of Caperton. I note that the Judicial Code and the disqualification statute provide for specific factual circumstances under which a judge must recuse, even when that judge could be completely fair. See, e.g., SCR 60.04(4)(a) to (f); Wis. Stat. § 757.19(2)(a) to (f). Caperton makes clear that a judge need not recuse simply because someone claims that the judge is partial. In other words, Caperton concludes that a reasonable, well-informed person, knowledgeable about judicial ethical standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know, would reasonably question the judge's ability to be impartial because of actual bias or the probability of a serious risk of actual bias. Such circumstances are exceedingly rare.
*404 ¶ 161. For the foregoing reasons, I respectfully concur.
¶ 162. I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK and Justice MICHAEL J. GABLEMAN join this concurrence.

 "The Code of Judicial Conduct is contained in ch. 60 of the Supreme Court Rules. It was formerly referred to as the Code of Judicial Ethics." State v. Henley, 2011 WI 67, ¶ 21 n.12, 338 Wis. 2d 610, 802 N.W.2d 175.

 The provisions of the disqualification statute and Supreme Court Rule ("SCR") Ch. 60, which identify specific factual circumstances where recusal is required, do not employ an analysis about reasonableness. However, "[t]he Judicial Code provides no authority to the supreme court to disqualify a justice from participating in a particular case when that justice has considered and decided a motion to disqualify him or her." Henley, 338 Wis. 2d 610, ¶ 23. "[T]his court does not have the power to remove a justice from participating in an individual proceeding, on a case-by-case basis." Id., ¶ 25. When presented with a disqualification motion, a "justice must decide for himself or herself whether his or her disqualification [is] required." Id., ¶ 11; see also id., ¶¶ 13, 26. In addition, the disqualification statute requires recusal "[w]hen a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner." Wis. Stat. § 757.19(2)(g).
Section 757.19(2)(g), [Wis.] Stats., mandates a judge's disqualification only when that judge makes a determination that, in fact or in appearance, he or she cannot act in an impartial manner. It does not require disqualification in a situation where one other *379 than the judge objectively believes there is an appearance that the judge is unable to act in an impartial manner; neither does it require disqualification... in a situation in which the judge's impartiality 'can reasonably be questioned' by someone other than the judge.
Donohoo v. Action Wisconsin Inc., 2008 WI 110, ¶ 24, 314 Wis. 2d 510, 754 N.W.2d 480 (quoted source omitted) (ellipsis added in Donohoo). Because Donohoo and Henley are controlling precedent, I rely on them in this opinion.

 For example, the Judicial Code requires recusal "when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial[.]" SCR 60.04(4) (intro.).

 These enumerated situations might require recusal although due process does not. See State v. Pinno, 2014 WI 74, ¶ 94, 356 Wis. 2d 106, 850 N.W.2d 207 (" '[T]he codes of judicial conduct provide more protection than due process requires ....'" (quoting Caperton, 556 U.S. at 890)).

 Although the Supreme Court in Caperton was discussing due process when it stated that not every campaign contribution requires a judge's recusal, the same principle applies under the Judicial Code. Wisconsin's Judicial Code states that " [a] judge shall not be required to recuse himself or herself in a proceeding based solely on any endorsement or the judge's campaign committee's receipt of a lawful campaign contribution, including a campaign contribution from an individual or entity involved in the proceeding." SCR 60.04(7). As the comment to this rule explains:
Campaign contributions to judicial candidates are a fundamental component of judicial elections. . . .
The purpose of [SCR 60.04(7)] is to make clear that the receipt of a lawful campaign contribution by a judicial candidate's campaign committee does not, by itself, require the candidate to recuse himself or herself as a judge from a proceeding involving a contributor. An endorsement of the judge by a lawyer, other individual, or entity also does not, by itself, require a judge's recusal from a proceeding involving the endorser. Not every campaign contribution by a litigant or [an] attorney creates a probability of bias that requires a judge's recusal.
Campaign contributions must be publicly reported. Disqualifying a judge from participating in a proceeding solely because the judge's campaign committee received a lawful contribution would create the impression that receipt of a contribution automatically impairs the judge's integrity. It would have the effect of discouraging "the broadest possible participation in financing campaigns by all citizens of the state" through voluntary contributions, see Wis. Stat. § 11.001, because it would deprive citizens who lawfully contribute to judicial campaigns, whether individually or through an organization, of access to the judges they help elect.
*385 SCR 60.04(7) cmt.

 Blankenship's $2.5 million donation to this political organization accounted for more than two-thirds of the funds raised by this organization during this election. Caperton v. A.T. Massey Coal Co., 679 S.E.2d 223, 304 (W. Va. 2008) (Benjamin, Acting C.J., concurring), rev'd and remanded, 556 U.S. 868 (2009) ("Mr. Blankenship personally contributed $2,460,500 [to this organization]. The remaining contributions, totaling $1,163,000, were given by other individuals and organizations.").

 Justice Benjamin's relevant campaign finance filing is available at http://apps.sos.wv.gov/elections/candidate-search /readpdf.aspx?DocId=5595.

 Justice McGraw's relevant campaign finance filing is available at http://apps.sos.wv.gov/elections/candidate-search /readpdf.aspx?DocId=5627.

 See State v. Walberg, 109 Wis. 2d 96, 105-06, 325 N.W.2d 687 (1982) (recognizing that Asfoor adopted this due process recusal test).

 A circuit court or court of appeals judge who recuses himself or herself may get replaced by a substitution judge. See Wis. Stat. §§ 757.19(5), 751.03. A circuit court or court of appeals judge may be replaced by a reserve judge. § 751.03(1). However, a supreme court justice who recuses himself or herself from a case cannot be replaced. See id.

 See Henley, 338 Wis. 2d 610, ¶¶ 11-17 (collecting cases).

 In addition to satisfying Wis. Stat. § 757.19(2)(g), a judge also satisfies the subjective due process recusal test by *395 determining that he or she is impartial. State v. McBride, 187 Wis. 2d 409, 415-16, 523 N.W.2d 106 (Ct. App. 1994) (citing State v. Rochelt, 165 Wis. 2d 373, 378-79, 477 N.W.2d 659 (Ct. App. 1991)); see also Caperton, 556 U.S. at 882 ("We do not question [Justice Benjamin's] subjective findings of impartiality and propriety. Nor do we determine whether there was actual bias."). In other words, if a judge determines that he or she is impartial, that determination is difficult to overcome.

 In Pinno we noted the reasonable person recusal standard in SCR 60.04(4)(intro.). State v. Pinno, 2014 WI 74, ¶ 96, 356 Wis. 2d 106, 850 N.W.2d 207. We did not separately analyze whether that standard required Judge Nuss's recusal, apparently because we recognized that it is coextensive with the objective due process test from Caperton. See id., ¶¶ 94-97.

 In Gudgeon the court of appeals held that due process was violated because the circuit court prejudged the issue of whether to extend the defendant's probation. State v. Gudgeon, 2006 WI App 143, ¶¶ 25-26, 295 Wis. 2d 189, 720 N.W.2d 114. Likewise, in Goodson the court of appeals held that due process was violated because the circuit court prejudged the reconfinement sentence that it would give to the defendant if his probation or extended supervision were revoked. State v. Goodson, 2009 WI App 107, ¶ 1, 320 Wis. 2d 166, 771 N.W.2d 385. Even if Caperton abrogated Gudgeon and Goodson, prejudgment can require recusal. See SCR 60.04(4)(f) (requiring recusal if a "judge, while a judge or a candidate for judicial office, has made a public statement that commits, or appears to commit, the judge with respect to any of the following: 1. An issue in the proceeding. 2. The controversy in the proceeding").

 We recently held that a circuit court judge, who had been properly substituted out of a case pursuant to Wis. Stat. § 971.20, "erred" in returning to the defendant's case to "pre *398 sid[e] over the defendant's trial, sentencing, and postconviction motions." State v. Harrison, 2015 WI 5, ¶ 8, 360 Wis. 2d 246, 858 N.W.2d 372.

 In Caperton the Supreme Court noted that "the codes of judicial conduct provide more protection than due process requires . . . ." Caperton, 556 U.S. at 890. The Court reasoned that "States have implemented [judicial reforms] to eliminate even the appearance of partiality." Id. at 888. As noted elsewhere in this opinion, SCR Ch. 60 aims to prohibit the appearance of impartiality and articulates specific, defined standards for recusal by listing specific instances where recusal is required even if a judge actually would be impartial. See, e.g., SCR 60.04(4)(a) to (f); Pinno, 356 Wis. 2d 106, *399 ¶¶ 95-97. However, under Wisconsin's Judicial Code, "[a] judge shall not be required to recuse himself or herself in a proceeding based solely on . . . the judge's campaign committee's receipt of a lawful campaign contribution, including a campaign contribution from an individual or entity involved in the proceeding." SCR 60.04(7).

 "By decisional law, the rule of necessity may override the rule of recusal." SCR 60.04(4) cmt; see also State ex rel. Wickham v. Nygaard, 159 Wis. 396, 150 N.W. 513 (1915); State ex rel. Cook v. Houser, 122 Wis. 534, 100 N.W. 964 *401 (1904). The rule of necessity is not without limitation. For example, "application of the common law Rule of Necessity should not result in the defendant, potential defendant, and the witnesses also sitting in final judgment of the case." In re Judicial Disciplinary Proceedings Against Prosser, 2012 WI 103, ¶ 5, 343 Wis. 2d 548, 817 N.W.2d 875 (opinion of Ziegler, J.).